(Nos. 39546, 40243, and 40250 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, vs. FRANK MACIAS, Appellant.—(THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* GENE T. WEBB *et al.,* Appellants.

*Opinion filed January 19, 1968.—Rehearing denied March 26, 1968.*

WARD, J., took no part.

SAM ADAM, R. EUGENE PINCHAM, and EARL E. STRAYHORN, all of Chicago, for appellants.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JOEL M. FLAUM, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

These cases arise out of the circuit court of Cook County and by our previous order have been consolidated for purposes of appeal. In a bench trial in April, 1965, (Docket No. 39546) defendant Frank Macias was convicted of

unlawful possession of narcotics and sentenced to the penitentiary for a term of not less than 2 nor more than 5 years. In a jury trial in March, 1966, defendants Frank Macias and Gene T. Webb were jointly tried and convicted of armed robbery, (Docket Nos. 40243 and 40250) and each was sentenced to the penitentiary for a term of not less than 10 nor more than 20 years. Each was acquitted on separate charges of attempted murder.

Defendants contend that the convictions in both cases should be vitiated because of alleged perjury of a police officer in the hearing on a motion to suppress evidence in the narcotics case and subsequent testimony on the same subject in the robbery case. For consideration of this contention we shall give a brief summary of the facts and then later recite such detailed facts as are necessary to a consideration of other points advanced by defendants as grounds for reversal in the respective cases.

On September 29, 1964, a jewelry store in Chicago was robbed of $22,000 in jewelry. In a bizarre chase two of the robbers dragging three hostages held a number of policemen at bay, proceeded to their get-away car about a block away, rescued their driver from another policeman by threatening to shoot a hostage and successfully drove away. In an exchange of shots a policeman was hit. Approximately four months later, on February 10, 1965, an arrest warrant was obtained for defendant Webb and on February 12 he was arrested by Federal authorities and turned over to the Chicago police about 3:00 o'clock in the afternoon. Learning from Webb and the Federal officers that about one month prior to the jewelry store robbery Webb and Macias had been arrested together in connection with an armed robbery in Louisiana, the description of Macias was checked through the Bureau of Identification files. It was determined that Macias's description matched the description of one of the jewelry store robbers and

immediately, about 3:30 or 4:00 P.M., Officer Evans and two other officers went to Macias's home and arrested him. Prior to being placed in the lock-up Macias was searched by the lock-up keeper and when his shirt was untucked from his pants ten sticks of marijuana and $900 in cash fell to the floor.

In the hearing on the motion to suppress the marijuana on the grounds that the arrest was without probable cause and unlawful, Officer Evans testified that prior to going out to Macias's house he showed some pictures of Macias and others to Sergeant Finnin. Finnin was an eyewitness to the jewelry store robbery and he identified the picture of Macias as one of the robbers. Subsequently, in the robbery trial in an attempt to discredit Sergeant Finnin's testimony as to his identification of Macias at a police lineup on February 12, 1965, defense counsel asked Finnin if he had ever seen a picture of Macias prior to the lineup. Finnin replied that he had not. To impeach Finnin, Officer Evans was then called, but he denied showing Macias's picture to Finnin prior to Macias's arrest and stated that to his knowledge Finnin had not seen a picture of Macias at any time prior to his arrest and appearance in the lineup.

Defendant Macias contends that this inconsistent testimony constitutes obvious perjury, that his arrest was unlawful and his conviction on the narcotics charge is null and void. Further, each defendant contends that such alleged perjury vitiates the entire proceedings in the robbery case and nullifies the convictions of both defendants.

We have held that claims of perjury will not generally be considered in reviewing a judgment of conviction, as in most cases the issue has not been presented to or passed upon by the trial court, and the facts in support of the claim do not appear in the record. (*People* v. *Grayson*, 29 Ill.2d 229.) The Post-Conviction Hearing Act has been held to be an appropriate remedy for assertion of a claim

of perjury so that the prosecution may have an opportunity to offer evidence to meet it. *People* v. *Hoskins,* 25 Ill.2d 333; *People* v. *Jennings,* 411 Ill.21.

This rule is applicable here. Even if it is accepted that Evans's inconsistent testimony in the two cases is evidence of perjury there is no way of determining in which case perjury occurred. Defendants do not charge the prosecutors with knowledge of the inconsistency but defense counsel for Macias was the same in both cases and he did have such knowledge. This is evidenced by the fact that Evans was called as a defense witness in the robbery case to impeach Sergeant Finnin's denial that he had seen Macias's picture prior to his arrest. Nonetheless, for reasons of trial tactics or appellate strategy, counsel did not see fit to call the inconsistency to the court's attention, nor did he seek to challenge Evans with the inconsistency. Approximately one year had elapsed between the two trials and it is entirely possible that given a chance to have his memory refreshed Evans may have been able to explain his statements or perhaps to retract one or the other. Instead, counsel chose to ignore the inconsistency not only at that time but during the entire trial and to bring it up for the first time on appeal. Nor was counsel's opportunity to bring out the inconsistency altered by the fact that Evans had been called as a defense witness, for as stated in *People* v. *Wesley,* 18 Ill.2d 138, 151, where a "witness unexpectedly gives testimony against the party calling him, such party has the right of examination to show that the witness gave surprise testimony and to specifically call his attention to former inconsistent statements made by him for the purpose of refreshing his memory or awakening his conscience to the end that he may relent and speak the truth if he is lying".

At this time we cannot make a determination of defendants' perjury charge since it was not presented to or passed upon by the trial court and, on the basis of the records before us, it is impossible to determine

whether perjury was committed, or if so, in which instance.

We now proceed to a separate consideration of the additional contentions of defendants in the individual narcotics and robbery cases.

I

In the narcotics case, after the motion to suppress was denied, stipulations were entered into and defendant Macias was found guilty by the court in a bench trial. The issues presented here are confined to the hearing on the motion. Defendant contends the police did not have probable cause to arrest him for the jewelry store robbery nor did they have a right to enter his home by alleged trickery and arrest him without a warrant for a crime committed nearly four months previously.

We have held that the test of probable cause is whether a reasonable and prudent man in possession of the knowledge which has come to the arresting officer would believe the person to be arrested is guilty of the crime; that it is something less than evidence that would result in conviction and may be founded on hearsay evidence; that it is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act. *People* v. *McCrimmon,* 37 Ill.2d 40; *People* v. *Jones,* 31 Ill.2d 42.

Here an armed robbery had been committed by three men. They had been observed by a number of police officers at close range, descriptions had been given of each man and the robbery had been under investigation for four months. Finally one of the robbers, defendant Webb, had been sufficiently identified by name to warrant the request for and issuance of an arrest warrant for him. Within 2 days Webb was arrested by Federal agents and, based on information received from them that Webb had been arrested with a Frank Macias for an armed robbery in Louisiana about a month before the jewelry store robbery, the Chicago police immediately checked with the Bureau of Identification. They

found that Macias's description fit that of one of the robbers for whom they were searching. Cognizant of the fact that news of Webb's arrest as a suspect in the jewelry store robbery had already been broadcast on the radio and that urgent action was essential to prevent further flight of Macias, the police immediately proceeded to his house to arrest him. This was within 30 or 45 minutes after the police first learned of Webb's arrest. If, as Officer Evans testified, a picture of Macias was first shown to Sergeant Finnin and he identified him as one of the robbers, there would be no question of probable cause. But even excluding such statement of Evans we hold that the officers, acting as reasonable and prudent men and in furtherance of efficient law enforcement procedures, had no choice but to proceed to make the arrest as quickly as possible and that they had probable cause to support their action.

Defendant next contends that the method of entry vitiated the lawfulness of the arrest even if it was based on probable cause. When the officers reached Macias's home they were admitted by his young son and to allay his fears they told him they were gas inspectors and asked if they might wait for his father's return. The officers testified that about 20 minutes later when they heard defendant coming up the steps they arrested him on the back porch.

Defendant's theory is that even conceding the existence of probable cause, he is constitutionally protected against police entry of his home unless the officers first announce their authority and purpose, and that to gain entrance by trickery is equivalent to breaking in. This argument assumes in this instance that the arrest resulted from the entrance but the facts indicate otherwise. The officers testified that defendant was arrested on the back porch so that there is no connection between the entry and the place of arrest. But assuming otherwise, the question is what means may an officer use to gain entrance to a house to make a lawful arrest. We are not aware of any Illinois cases specifically

in point nor has counsel cited any. However, section 107—5(d) of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, chap. 38, par. 107—5(d)) provides: "All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to make an authorized arrest".

This same question has been considered in *Ker* v. *State of California,* 195 Cal. App. 2d 246, 15 Cal. Rptr. 767, and affirmed in the United States Supreme Court, 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623. This was a case in which officers had probable cause to believe that defendant was in unlawful possession of narcotics. They obtained a key to defendant's apartment from the manager, entered without knowledge of defendant, arrested him and seized various items of narcotics. The California Penal Code, section 844, authorizes breaking in to make a lawful arrest but requires that the officers first give notice of authority and purpose. The California court held the noncompliance with the statute was justified to prevent the destruction of contraband. The United States Supreme Court (374 U.S. at 39, 10 L. Ed. 2d at 741) in affirming quoted with approval from *People* v. *Maddox,* 46 Cal. 2d 301, 306, 294 P.2d 6, 9, to the effect that: "It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be

interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. * * * Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance."

Applying such reasoning to the facts before us we find that the officers had just reason to believe that they were dealing with a man who had engaged in a violent armed robbery in which one policeman had been shot and three hostages taken as prisoners and threatened with death, that their mission could be perilous, that defendant may already have heard the radio news of his codefendant's arrest and his arrest could be frustrated by further flight. We therefore hold that under the exigent circumstances of this case the officers' method of entry was not unreasonable under either State or Federal constitutions.

## II

The robbery was committed in daylight just as the jewelry store opened for business. Entering separately, the first robber posing as a customer handcuffed the owner and a maintenance man together in the washroom at the rear. The second robber forced an employee out of the display window to the rear where he was handcuffed to the washroom door. While both robbers were looting the store the owner was able to push a burglar alarm button to which the police responded immediately. Unable to shoot the lock off the back door the robbers, using their hostages as shields, pushed their way out the front. One, later identified as Macias, held the owner around the neck from behind with a gun to his head threatening to shoot if any policeman interfered. The maintenance man was still handcuffed to the owner. The other robber with gun in hand crouched behind the employee and used him as a shield. They ran east to the corner, then south to the middle of the block, then

west up an alley past the rear of the jewelry store to a parking lot where their get-away car was parked. In the meantime, the police had apprehended the driver of the car, later identified as defendant Webb, and he was standing with his hands outstretched on the roof of the car with a policeman guarding him. Again threatening to shoot their hostages the robbers forced the release of the driver and drove off. In an exchange of shots one policeman was wounded.

Defendants first question the sufficiency of their identification. Macias was identified by six policemen and the owner of the shoe store next to the jewelry store. The latter witness had observed Macias trying to shooting off the lock on the back door and again saw him as he passed close by him at the front of the store. The police had a number of opportunities to observe Macias, first in the store and then during the escape as he passed within a few feet of each of them warning them to hold their fire. Webb was identified by the officer who first apprehended him in the car and by the officer who stood guard over him, and finally by one of the hostages.

Defendants argue that since no one of the hostages identified Macias this fact alone renders improbable the identification by the other witnesses; that the opportunity for accurate identification did not exist, that all witnesses were subjected to suggestive techniques and some did not attend the lineup; and that with only two exceptions all identification witnesses were police officers. Attendance at a lineup is not a prerequisite to positive identification by a credible witness. (*People* v. *Brinkley,* 33 Ill.2d 403.) Nor does the fact that some persons present failed to identify the accused require a reversal. (*People* v. *Perkins,* 17 Ill.2d 493.) Particularly is this true where, as here, the police were in a better position to observe throughout the whole chase and under less emotional strain and fear than were the hostages. We find no support in the record for the other contentions of defendants. Eyewitness identifications may

at times present problems, but not in this case. The jury instructions were broad and covered all the many elements essential to the acceptance or rejection of such evidence and we find that the verdict of the jury was fully justified.

Defendants next complain that certain police reports containing descriptions of the robbers made at or near the time of the robbery were denied to defense counsel. One of these was a graphics art report containing several descriptions used by a police artist to make composite sketches. Another was a report of a policeman (Officer Riccio) which contained a description of defendant Webb allegedly given by one of the hostages, though it too may have been a composite supplied to Riccio by Officer Evans. Thus, there is some question whether the reports constitute a "statement". of the witness being examined as required by *People* v. *Wolff,* 19 Ill.2d 318. But in any event, though such reports were not furnished while the witness was still on the stand, they were supplied later in the trial and the alleged error was harmless. *People* v. *Watson,* 36 Ill.2d 228.

We have further examined and find no merit in defendants' claims relative to a denial of a midtrial continuance, admonition of counsel, alleged limitation of scope of cross-examination, the State's use of artist sketches and photographs, and the State's cross-examination of witnesses as to events and appearances of defendants prior to the crime. In each instance the rulings of the court were within its judicial discretion, proper and without prejudice to defendants. Likewise, considering the violent nature of the crime committed we cannot say the penalties imposed were excessive.

The judgments of the circuit court of Cook County in Docket Nos. 39546, 40243 and 40250 are each affirmed.

*Judgments affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.