(No. 40499.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
MILTON DENHAM, Appellant.

*Opinion filed Sept. 24, 1968.—Rehearing denied Nov. 21, 1968.*

WARD, J., took no part.

GERALD W. GETTY, Public Defender, of Chicago, (JAMES R. THOMPSON, JAMES J. DOHERTY, and MARSHALL J. HARTMAN, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and HOWARD LEVINE, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, Milton Denham, was convicted of armed robbery following a jury trial in the Cook County circuit court and sentenced to a term of 2 to 10 years in the penitentiary. He appeals directly to this court contending, primarily, that a knife seized from him at the time of his arrest should have been suppressed since the defendant's arrest resulted from interrogation of third parties who had not been warned of their constitutional rights.

On August 9, 1966, Leon Miller was arrested by Chicago police officers in connection with a robbery. During the course of his interrogation by the police, Miller was asked whether he knew the names of any persons participating in holdups in the Old Town area. Miller thereupon implicated Richard Ford, who was subsequently arrested and also interrogated by the police. During his interrogation Ford informed the police that both the defendant and Irving Duffy

had been committing burglaries in the Old Town area. He further revealed that the defendant was employed in a restaurant on Chicago Avenue. After receiving this information the police arrested Irving Duffy, who stated during questioning that the defendant was employed at the restaurant on Chicago Avenue which had been previously mentioned by Ford. Duffy also told the police that the defendant was "crazy" and armed either with a gun or a knife. There is no indication, however, that Duffy implicated the defendant in any crime whatsoever. Acting in reliance on this information, the police proceeded to the Chicago Avenue restaurant and, without a warrant, arrested the defendant. A search of his person revealed that he was carrying a knife.

Following his arrest on August 10, the defendant was taken to the police station and placed in a line-up, where he was identified by Joan Majewski as being one of four men who had robbed her and her escort at knife point on the evening of August 8, 1966. At defendant's trial Miss Majewski testified that it was the defendant who first approached her and her escort, Robert Duffy, and that defendant carried a knife. She also acknowledged identifying the defendant at the police line-up on August 10 and further testified that the knife he had carried on the evening of the robbery was similar in size, shape, and description to that offered into evidence by the State.

Robert Duffy appeared for the defense, and, although his version of the circumstances of the robbery coincided with that of Miss Majewski, he stated that he was unable to identify the defendant at the police line-up on August 10 and, although admitting that he suffered from night blindness, testified that he believed that the knife in evidence was not the knife used in the robbery.

Prior to trial, defendant moved to suppress the knife on the ground that its seizure stemmed from information obtained during the unlawful interrogation of Richard Ford

and Irving Duffy. Although the interrogating officers contended that both of these men had been warned of their constitutional rights, the record places some doubt on this point, for, when asked by defense counsel to relate his entire conversation with each of these two men, neither of the interrogating officers mentioned warning the interrogees of their rights. Even if the defendant is correct, however, in arguing that neither Ford nor Irving Duffy were given any of the warnings established by the United States Supreme Court in *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, we are of the opinion that any denial of their rights to remain silent or to have counsel cannot be relied upon by the defendant to challenge the admissibility of the evidence of which he complains.

The issue in the *Miranda* decision concerned the admissibility of statements obtained from a defendant while being interrogated in police custody. The court found that, because the defendant had not been informed (1) of his right to remain silent, (2) that any statements he made may be used in evidence against him, and (3) that he had a right to the presence of counsel, he was therefore denied his rights under the fifth amendment of the constitution of the United States. It follows that the safeguards set forth in *Miranda,* pertaining to self-incrimination, are personal in nature.

Although there are no Illinois cases concerning the specific point, an argument identical to defendant's was made recently in the Supreme Court of California in *People* v. *Varnum* 59 Cal. Rptr. 108, 427 P.2d 772. There the majority of the court held that "non-coercive questioning is not in itself unlawful, however, and the Fifth and Sixth Amendment rights protected by *Escobedo, Dorado,* and *Miranda* are violated only when evidence obtained without the required warnings and waiver is introduced against the person whose questioning produced the evidence." We share this view and conclude that, in the absence of any showing

that coercive tactics were used in questioning either Ford or Irving Duffy, no rights of this defendant were violated.

Defendant also claims that his arrest was without probable cause and, therefore, unlawful and that the knife seized at the time of the arrest should have been suppressed. There is no doubt that an arrest without a warrant is lawful if a criminal offense has been committed and the arresting officer has reasonable grounds for believing the person to be arrested committed it. *People* v. *McCrimmon,* 37 Ill.2d 40; Ill. Rev. Stat. 1963, chap. 38, par. 107—2(c).

While an uncorroborated "tip" by an unknown informer alone does not constitute probable cause for arrest (*People* v. *Parren,* 24 Ill.2d 572), such a "tip" when corroborated by other facts and circumstances may constitute such probable cause. (*People* v. *McFadden,* 32 Ill.2d 101.) As we stated in *People* v. *Macias,* 39 Ill.2d 208, 213: "We have held that the test of probable cause is whether a reasonable and prudent man in possession of the knowledge which has come to the arresting officer would believe the person to be arrested is guilty of the crime; that it is something less than evidence that would result in conviction and may be founded on hearsay evidence; that it is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act."

We believe that the facts before us constituted probable cause for defendant's arrest. The arresting officer had information from one person arrested as a member of a robbery gang implicating the defendant and Irving Duffy as members of the gang. Interrogation of Duffy corroborated the fact of defendant's place of employment and the mutual acquaintance between Irving Duffy and the defendant, and also the fact that defendant was "crazy" and armed. This was far more than the unsolicited and uncorroborated "tip" in *Parren* and fully justified prompt police action in arresting and searching the defendant.

Defendant's final contention is that reversible error was committed in permitting Miss Majewski's companion, Robert Duffy, to testify that Miss Majewski identified defendant in a police line-up. As a general rule one witness may not testify to a prior identification of an accused by another person. *People* v. *Harrison,* 25 Ill.2d 407; *People* v. *Krejewski,* 332 Ill. 120; *People* v. *Lukoszus,* 242 Ill. 101; *People* v. *Wright,* 65 Ill. App. 2d 23.

These cases, however, all involved testimony on direct examination elicited by the prosecution in its case in chief, and served either as a substitute for a courtroom identification or to bolster and corroborate a weak identification. In the present case, however, Miss Majewski positively identified the defendant at the trial. Robert Duffy was called as a witness for the defense and testified that he attended a police line-up with Miss Majewski and was unable to identify any person there. He was then asked:

"Q. Now, was Milton Denham, as you now know him, in that line-up?

A. Well, on the basis of the fact that I couldn't identify him then I certainly can't identify him now.

Q. Was this boy in the line-up?

A. I can't say for sure."

On cross-examination he admitted that Miss Majewski did identify two people in the line-up. While we believe that such testimony would be inadmissible if offered by the State in its case in chief or in rebuttal, we do not believe that the questions and answers elicited exceeded the permissible bounds of cross-examination. Robert Duffy was used as a defense witness to cast doubt on the identification of the accused and testified that he couldn't say if Denham was in the line-up. This opened the door to a searching cross-examination as to what transpired at the line-up. This testimony offered for impeachment is not subject to the objection that it is hearsay and we feel that under all

the facts and circumstances it was not reversible error to permit the cross-examination of Robert Duffy.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.