The People of the State of Illinois, Plaintiff-Appellee, v. Pedro Ramos, Defendant-Appellant.

Gen. No. 69–37.

Second District.

September 11, 1969.

Knight, Ingrassia & Schirger, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney of Winnebago County, of Rockford, for appellee.

PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court.

The defendant was found guilty by the trial court of the offense of unlawfully and knowingly possessing a narcotic drug, to wit, heroin. He was sentenced for a term of not less than two nor more than five years after being denied probation. This appeal is from the findings, judgment and sentence.

It is contended that (1) the defendant was entrapped into the commission of the offense, (2) the trial court erroneously placed the burden of proving that he was entrapped upon him instead of placing the burden on the State to prove that he was not entrapped, and (3)

there was no probable cause shown by the evidence to justify the authorities in breaking into the premises of the defendant without a search warrant.

We will first discuss the third contention. Prior to trial, the defendant moved to suppress the evidence as it related to a tinfoil package of heroin. The motion was denied. The brief of the defendant, without benefit of citation of authority, devoted a single sentence to this alleged error by stating, "Further, probable cause was not shown by the evidence to justify the breaking into the premises of the defendant without a search warrant."

The evidence referred to in the above quote consisted of the testimony of a police officer, Anthony Viola, which established that on June 12, 1968, one Rafael Yanez was arrested on the charge of possessing heroin. At the time of his arrest, he was asked if he would inform the officer of his contacts and he responded that he obtained the heroin from Ynez Ramos, brother and codefendant of Pedro Ramos, who was living in an apartment at a certain address in Rockford. He was then asked if he would make another "buy" and he agreed to do so. Thereupon, Yanez was searched and "everything" was taken from him. He was then given a prerecorded $20 bill and driven to the address of the defendant. Upon arriving at the defendant's residence, which was a second-floor apartment, Yanez was observed entering the front door of the building, proceeding up a flight of stairs and (there being just two apartments on the floor) going to a door believed to be the door to the apartment of the defendant. Yanez was gone about three minutes and returned downstairs where the witness and other officers were waiting. Upon his return, he handed one of the officers a tinfoil package which was opened and in the opinion of the witness, knowledgeable in narcotics, the contents were believed to be heroin.

With these circumstances as a background, the witness and another officer went to the door of defendant's

apartment, knocked upon it and identified themselves. Upon hearing a commotion from within, as if some one was running, they forced the door open and the witness observed the defendant and his brother running into the bathroom; he pursued them but they closed the door and held it shut. At the same moment, he heard the toilet flush and thereafter the defendant and his brother came out. In addition to the defendant and his brother there were four other men in the apartment at the time. The defendant was placed under arrest and, upon searching him in the kitchen, the prerecorded $20 bill was found. Also found, underneath some newspapers on a small kitchen table, was a tinfoil packet of heroin.

The defendant testified that he was the lessee of the apartment; that at the time the police forced their way into the apartment he was about to enter the bathroom as his brother was leaving it; that no one gave the police permission to enter; that the police had their guns drawn and told everyone to stay where they were; that the police did not state that they had a search warrant but, nevertheless, started searching the apartment. On cross-examination he testified that he had a $20 bill on his person when searched; that Yanez, who gave him the bill, had stated, "Here's part of the—here's five dollars I owe you, and I'll take my girl, I'll be right back, I have to take my girl to her home and come right back"; that Yanez left and it was then that all of the commotion commenced. When asked if the police took anything from the apartment, he stated, "Not to my knowledge." The only other witness who testified on the motion to suppress was the defendant's brother. His testimony related only to the fact that the police "barged in" and that he did not see or hear of a search warrant.

██ ██ The defendant claims that the above factual situation did not support sufficient probable cause for the police to break into the premises without a search warrant. We cannot agree with such a claim. As recently

as the case of People v. Macias, 39 Ill2d 208, 213, 234 NE2d 783 (1968), cert den 393 US 1066, it was stated:

"We have held that the test of probable cause is whether a reasonable and prudent man in possession of the knowledge which has come to the arresting officer would believe the person to be arrested is guilty of the crime; that it is something less than evidence that would result in conviction and may be founded on hearsay evidence; that it is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act."

Whether probable cause existed must be governed by the totality of the facts and circumstances in each case. People v. Hanna, 42 Ill2d 323, 328, 247 NE2d 610 (1969). An uncorroborated "tip" from an unknown informer alone does not constitute probable cause for arrest without a warrant; however, when such "tip" is corroborated by other facts and circumstances it may constitute probable cause. People v. Denham, 41 Ill2d 1, 5, 241 NE2d 415 (1968).

■ In the instant case, the "tip" by the informant, Yanez, was not the sole basis for the authorities entering the defendant's premises. On the contrary, rather than immediately force their way into the apartment, they first had the informant substantiate his "tip" by making another purchase and awaited the outcome before entering to make the arrest. The probable cause, therefore, was not based on just the reliability of the "tip" alone, but upon verification of the same. People v. McFadden, 32 Ill2d 101, 103, 203 NE2d 888 (1965), cert den 382 US 871. When Yanez returned from the apartment with a tinfoil package containing what was identified as heroin, the police officers had reasonable grounds to believe that an offense had been committed, People v. Boozer, 12 Ill2d 184, 188, 145 NE2d 619 (1957), and they there-

335

fore had probable cause to enter the defendant's apartment without a search warrant.

It is argued that the defendant was entrapped into the commission of the alleged offense by the State Narcotic Bureau's special employee, Yanez, who supplied the sine qua non of the offense. At the time of trial, the defendant attempted to introduce into evidence a written statement, allegedly in the handwriting of and signed by Yanez. The statement related how Yanez was arrested earlier in the evening for possession of heroin; that the police found a bag of heroin in his jacket but they did not find the one in his shoe; that he was forced by the police, under the threat of being killed, to accompany them to the defendant's residence. It went on to state that Yanez was given a marked $20 bill; that after being dropped off, "I go upstairs by myself and tell Pedro Ramos that here is the five dollars that I owe him and that I would be back for the change later. (B)ut he or no one in that house gave or sold me anything. I tell him I will be back for the change later and as I walk out the door I take the other bag of herion (sic) from my shoe and go downstairs wits (sic) it as I get downstairs they grabbed and took the other bag from me and charged me with possession."

The trial court refused to allow the statement into evidence and informed the defendant that Yanez himself would have to testify so that he could be cross-examined. A colloquy between the court and counsel revealed that the defendant had subpoenaed Yanez; that he sat in the courtroom throughout the trial after a motion to exclude all witnesses had been allowed; and that at this particular time the witness was not present because the defendant's counsel had sent him home. The defendant was granted a continuance to the next day so that he might produce this witness. Upon resuming the trial, the court was informed by the defendant's counsel that he was unable to locate Yanez; that he excused Yanez from the

original subpoena for the reason that he believed the court would allow Yanez's statement into evidence. The court stated that it was anxious to have Yanez testify regardless of the fact that he had heard all of the testimony, so the case, on motion of the defendant, was again continued. When the case was called after the second continuance, defendant's counsel informed the court that Yanez had disappeared and, therefore, they were unable to serve the second subpoena upon him. The statement was reoffered into evidence but the offer was denied.

 The trial court was correct in denying the admission of Yanez's statement into the record on the basis that it would not be subject to cross-examination. What constitutes hearsay evidence is best explained by restating a quote from the case of People v. Carpenter, 28 Ill2d 116, 190 NE2d 738 (1963), where the Court, at page 121, said,

> " 'Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' (McCormick, Law of Evidence, sec 225; see also, Cleary, Handbook of Illinois Evidence, sec 31.1 et seq.)"

and then went on to state,

> "The fundamental purpose of the hearsay rule was and is to test the real value of testimony by exposing the source of the assertion to cross-examination by the party against whom it is offered. While the administration of an oath and the right of confrontation are also spoken of as necessary elements, the essential feature, without which testimonial offerings must be rejected, is the opportunity for cross-examination of the party whose assertions are offered to

prove the truth of the act asserted. (Wigmore on Evidence, 3rd ed sec 1361 et seq.; People v. Smuk, 12 Ill2d 356.)"

Based upon the premise that Yanez was an agent of the State, defendant contends that any statement made by him, either orally or in writing, which is contrary to the evidence introduced by the State, is competent. This is partially true but it lacks an essential ingredient in this case; that is, the author of the statement must be available to be cross-examined as to the veracity of matters therein asserted. This being the case, the State cannot then be charged with fault when it was the defendant who was responsible for excusing Yanez after he responded to the original subpoena.

Further, even if the statement had been admitted into evidence it would be of no avail to the defendant. As seen from the quoted section above, Yanez does not claim that he left the tinfoil package of heroin found by the police on the table in the kitchen. His statement accounts only for the package of heroin found upon him when he was originally arrested that evening and the package of heroin (which the statement asserts was in his shoe) which he turned over to the police after his visit to the defendant's apartment. Therefore, there still remained an unexplained third package of heroin, confiscated by the police in the apartment of the defendant, upon which the indictment and prosecution was based.

Although defendant claims the defense of entrapment for a reversal of the case, it should be here noted that at no time prior to the filing of his briefs has the word "entrapment" ever been stated nor has the defense of entrapment ever been raised. It is argued for the first time in this Court. Cf., People v. Outten, 13 Ill2d 21, 23–25, 147 NE2d 284 (1958); People v. Van Scoyk, 20 Ill2d 232, 235, 170 NE2d 151 (1960). While entrapment need not be specially pleaded or relied upon ex-

clusively, it must be clearly suggested in the trial court. People v. Strong, 21 Ill2d 320, 324, 172 NE2d 765 (1961).

█ Despite these considerations, we are of the opinion that the defendant cannot avail himself of the defense because the record discloses that he has consistently denied having any knowledge relative to the package of heroin found on the kitchen table in his apartment. In People v. Realmo, 28 Ill2d 510, 512, 192 NE2d 918 (1963), the Supreme Court held:

> ". . . the defense of entrapment (is) incompatible with denial of the commission of the acts constituting the offense. (People v. Johnson, 24 Ill2d 195; People v. Van Scoyk, 20 Ill2d 232). Since defendant relied below upon a denial that he performed the alleged acts, he cannot here claim he was induced or lured into performing them under circumstances amounting to entrapment."

See also, People v. Calcaterra, 33 Ill2d 541, 546, 213 NE 2d 270 (1965), appeal dismissed 385 US 7; People v. Banks, 103 Ill App2d 180, 188, 243 NE2d 669 (1968).

The cases on this point submitted by the defendant have been studied but we find them not to be in point with the facts as disclosed by the record herein.

For the reasons stated we find no error upon which to reverse this cause and therefore the judgment is affirmed.

Judgment affirmed.

DAVIS and SEIDENFELD, JJ., concur.