THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH E. GANT, Defendant-Appellant.

(No. 57517; ▮▮▮▮▮▮▮▮

First District (1st Division)—August 13, 1973.

James J. Doherty, Public Defender, of Chicago, (Robert M. Gray, Assistant Public Defender, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and James M. Schreier, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The defendant, on a bench trial, was found guilty of the possession of a controlled substance (barbiturate capsules) and was sentenced to one year on probation. On appeal, he contends (1) that probable cause for the arrest has not here been established because the State did not prove the credibility of the informer or corroborate his information by other facts and circumstances; (2) that the arrest should not have been made without first obtaining a warrant; and (3) that the barbiturate capsules, which the defendant dropped as he got out of his car at the officer's order, were "fruit" of said illegal arrest and should have been suppressed.

We conclude that there was probable cause for the arrest and that a

warrant was not required. We therefore affirm, without reaching the third issue.

No question is raised as to the sufficiency of the complaint and the facts are not in dispute. At approximately 12:30 A.M. on November 18, 1972, Officer Mitchell was seated in a squad car at 48th Street and Calumet Avenue in Chicago with his partner and an informant, who had previously given information to said partner. The informant told Officer Mitchell that the defendant, Joseph Gant, was sitting nearby in his red convertible with some barbiturate capsules in his possession. The informant added that he knew this because he had just consumed two of them. Relying on this information, plus his own conclusion that the informant was under the influence of narcotics and seeing the defendant in just such a red convertible as the informant had described, Officer Mitchell approached the defendant and ordered him to get out of his car. As the defendant did so, he dropped some red capsules from his hand and the officer retrieved them and detained the defendant. The crime laboratory analysis was that the capsules contained derivatives of barbituric acid. Neither at the hearing on the motion to suppress the evidence, nor at the trial, did Officer Mitchell's partner testify, nor was any evidence brought out to establish the reliability of information previously furnished by this informant. The defendant did not testify.

Passing now to the defendant's first contention—it is quite true as his counsel points out, citing *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L.Ed. 2d 723, 84 S.Ct. 1509, that (quoting from plaintiff's brief):

> "Reasonable grounds for believing that person has committed a criminal offense may be found in two particular situations: in factual information furnished by an informant if his reliability has been firmly established, or where this same information has been independently corroborated."

and, citing *United States v. Harris* (1971), 403 U.S. 573, 29 L.Ed.2d 723, 91 S.Ct. 2075, that (again quoting from plaintiff's brief):

> "The Court must be informed that they are relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

The foregoing is reflected also in the Illinois decisions. In *People v. Denham*, 41 Ill.2d 1, 241 N.E.2d 415, our Supreme Court, at page 5, points out that:

> "While an uncorroborated 'tip' by an unknown informer alone does not constitute probable cause for arrest (*People v. Parren*, 24 Ill.2d 572), such a 'tip' when corroborated by other facts and circumstances may constitute such probable cause. (*People v. Mc-*

*Fadden,* 32 Ill.2d 101.) As we stated in *People v. Macias,* 39 Ill.2d 208, 213: 'We have held that the test of probable cause is whether a reasonable and prudent man in possession of the knowledge which has come to the arresting officer would believe the person to be arrested is guilty of the crime; that it is something less than evidence that would result in conviction and may be founded on hearsay evidence; that it is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act.' "

In *People v. Ramos,* 112 Ill.App.2d 330, 250 N.E.2d 822, this court, at page 335, said:

"Whether probable cause existed must be governed by the totality of the facts and circumstances in each case. People v. Hanna, 42 Ill.2d 323, 328, 247 N.E.2d 610 (1969). An uncorroborated 'tip' from an unknown informer alone does not constitute probable cause for arrest without a warrant; however, when such 'tip' is corroborated by other facts and circumstances it may constitute probable cause. People v. Denham, 41 Ill.2d 1, 5, 241 N.E.2d 415 (1968)."

And in *People v. Holloman,* 46 Ill.2d 311, 263 N.E.2d 7, our Supreme Court, at page 317, in affirming a drug conviction said:

"* * * After examining the totality of circumstances surrounding the search we find that they would 'warrant a man of reasonable caution in the belief' that the action taken was appropriate [citations].' *Terry v. Ohio* (1968), 392 U.S. 1, 21-22, 20 L.Ed.2d 889, 906, 88 S.Ct. 1868, 1880; see also *People v. Thomas,* 31 Ill.2d 212."

Let us now examine a few cases to ascertain what corroborating facts and circumstances have been adjudicated adequate to establish probable cause.

In *People v. Tillman,* 1 Ill.2d 525, 116 N.E.2d 344, the officer received a telephone call from an unidentified person who said that a man named Trench Coat—a tall, slim colored man about 25 years old, living in a certain room in the Strand Hotel with a heavyset woman—had sold narcotics to an addict the night before. The officer and his partner went to that room in that hotel, saw such a woman, arrested her and found heroin on her. They then arrested the defendant, who was called Trench Coat. Capsules of heroin were found under the mattress. In affirming, our Supreme Court, at page 531, said:

"Did the officers act unreasonably in their arrest of the defendant? We think not. Whoever informed the officer about Trench Coat had been correct in every detail * * *."

In *People v. McFadden,* 32 Ill.2d 101, 203 N.E.2d 888, Ware, a State narcotic's inspector, who had gotten a tip from an informer, telephoned Officer O'Brien and said that the defendant, whose clothing and physical appearance he described in detail, would be getting off a northbound bus at 61st and Halsted, Chicago, at about 2:00 P.M. and that he would have narcotics in his possession. The police officer saw such a man get off a northbound bus at that corner at 2:05 P.M. and arrested and searched him, the defendant, finding narcotics. In affirming the conviction, our Supreme Court, at page 103, said:

> "* * * Here all of the information furnished by Ware, except possession of narcotics by defendant was personally verified by the officers before the arrest * * *."

In *People v. Robinson,* 105 Ill.App.2d 57, 245 N.E.2d 137, a police informer told police officers that he had just purchased a bag of marijuana and pointed out the defendant as the seller. He was arrested and a search disclosed marijuana. In affirming the conviction, this court, at page 64, said:

> "As to defendant's arrest, we agree with the trial court that the information received from the informer, as such, was sufficient to give the officers probable cause to believe that the defendant was committing or had committed an offense. (Ill Rev Stats, c 38, § 107—2(a) and (c).) They were informed by a purchaser as to a narcotics sale just made, and it was also reasonable to believe that a narcotics dealer might have on his person possession of other narcotics for sale."

In *People v. Ramos,* 112 Ill.App.2d 330, 250 N.E.2d 822, the police had the informant substantiate his "tip" by making another purchase. After he returned with a packet of heroin the officers made their arrest and search. In affirming the conviction, the Appellate Court for the Second District, at page 335, said:

> "In the instant case, the 'tip' by the informant Yanez, was not the sole basis for the authorities entering the defendant's premises. On the contrary, rather than immediately force their way into the apartment, they first had the informant substantiate his 'tip' by making another purchase and awaited the outcome before entering to make the arrest. The probable cause, therefore, was not based on just the reliability of the 'tip' alone, but upon verification of the same. People v. McFadden, 32 Ill.2d 101, 103, 203 N.E.2d 888 (1965), cert den 382 US 871 * * *."

In *People v. Maddox,* 294 P.2d 6, 46 Cal.2d 301, an informer told the police officers that he had just bought a $10 paper of heroin in the defendant's home and had used the defendant's equipment to take the shot.

On this information, plus surveillance, the officers arrested the defendant and searched his home. In affirming the conviction, the Supreme Court of California, at page 8, said:

> "* * * Moreover, in the present case Officer Taylor had defendant's home under surveillance for about a month and had observed known narcotics users frequenting it, and the information Davis gave him before the arrest was reasonable cause for the arrest. See, People v. Boyles, 45 Cal.2d 652, 290 P.2d 535; Penal Code, § 836(3)."

Applying the criteria above developed, let us look at the facts and circumstances known to the officer as he approached the defendant. He had been informed by an informer, known to his partner sitting in the squad car with him, that the defendant, sitting nearby in a red convertible, had in his possession some red barbiturate capsules, and that he knew this because he had just consumed two of them. The time was just after midnight, in an area having a high crime rate and the informer seemed to be under the influence of narcotics. And there was the defendant in just such a red convertible as the informer had described.

■■ We conclude that this was much more than "a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." On the contrary, the information related to a specific act of the defendant and the informant's information was fully corroborated. Certainly the "totality of the facts and circumstances" known to the officer as he approached the defendant, sitting in his red convertible at 12:30 A.M. in the morning, was such as to constitute probable cause to arrest him, and we so hold.

This brings us to the defendant's second contention—that the arrest should not have been made without first obtaining a warrant.

In the case at bar, the place is on a public street in a high crime area, the time is 12:30 A.M. and the defendant is sitting there in his red convertible, and, according to the informant, peddling drugs. And, as we have just held, the officer had probable cause to arrest the defendant. Must the officer, nevertheless, first appear before a judicial officer and obtain a warrant? We think not.

In *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, the defendants were found guilty of violating the National Prohibition Act on the basis of liquor discovered by stopping and searching their automobile without a warrant on a public highway. In affirming, the Supreme Court, speaking through Mr. Chief Justice Taft, at page 153, said:

> "We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches

and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

In *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, two men robbed a Gulf service station and fled in a light blue compact station wagon and their description was broadcast over the police radio. Such a car was stopped and the passengers, including the defendant, arrested and searched without a warrant. In affirming the conviction, the Supreme Court, at pages 48-50, said:

"In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office. In *Carroll v. United States*, 267 U.S. 132 (1925), the issue was the admissibility in evidence of contraband liquor seized in a warrantless search of a car on the highway. After surveying the law from the time of the adoption of the Fourth Amendment onward, the Court held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize. * * *

*Carroll* was followed and applied in *Husty v. United States*, 282 U.S. 694 (1931), and *Scher v. United States*, 305 U.S. 251 (1938). It was reaffirmed and followed in *Brinegar v. United States*, 338 U.S. 160 (1949). In 1964, the opinion in *Preston, supra*, cited both *Brinegar* and *Carroll* with approval, 376 U.S., at 366-367. In *Cooper v. California*, 386 U.S. 58 (1967), the Court read *Preston* as dealing primarily with a search incident to arrest and cited that case for the proposition that the mobility of a car may make the search of a car without a warrant reasonable 'although the result might be the opposite in a search of a home, a store, or other fixed piece of property.' 386 U.S., at 59. The Court's opinion in *Dyke*, 391 U.S., at 221, recognized that '[a]utomobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office,' citing *Brinegar* and *Carroll, supra* * * *."

And, recently the United States Supreme Court, in *Cady v. Dombrow-*

*ski,* 41 L. W. 4995 (6/19/73), case 72-586, in affirming a conviction of murder, at page 4996, said:

> "The ultimate standard set forth in the Fourth Amendment is reasonableness. In construing this command, there has been general agreement that 'except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant.' *Camara v. Municipal Court,* 387 U.S. 523, 528-529 (1967). See *Coolidge v. New Hampshire,* 403 U.S. 443, 454-455 (1971). One of the class of cases which constitutes at least a partial exception to this general rule is automobile searches. Although vehicles are 'effects' within the meaning of the Fourth Amendment, 'for purposes of the Fourth Amendment there is a constitutional difference between houses and cars.' *Chambers v. Maroney,* 399 U.S. 42, 52 (1970). See *Carroll v. United States,* 267 U.S. 132, 153-154 (1925)  *  *  *."

Illinois follows this same distinction as to automobiles.

In *People v. Erb,* 128 Ill.App.2d 126, 261 N.E.2d 431, the Appellate Court for the Fourth District, in affirming a narcotics conviction, at page 133, took the position that:

> "The courts, moreover, have long distinguished between an automobile and a home or office in terms of circumstances justifying a warrantless search. See Chambers v. Maroney, 399 US 42, 26 L.Ed.2d 419, 426, 90 S Ct 1975, 1979 (1970), holding that 'automobiles and other conveyances may be searched without a warrant in circumstances which would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize.'  *  *  *"

■■ We therefore hold that, inasmuch as the officers had probable cause to arrest and search the defendant and the defendant was sitting in his automobile on a public street at 12:30 A.M. presumably peddling drugs, the arresting officer was not required first to obtain a warrant.

We therefore affirm, without reaching the question of whether the capsules which fell from his hand as he got out of his car were the "fruit" of his arrest.

Judgment affirmed.

GOLDBERG and EGAN, JJ., concur.