THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
ROBERT VOGEL, Defendant-Appellee.

Third District No. 77-246

Opinion filed April 12, 1978.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong and Linda M. Vodar, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

John F. Boos, of O'Hern, Wombacher, Moon & Boos, of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The defendant, Robert Vogel, was charged by information with the offense of unlawful possession of a controlled substance (cocaine). The circuit court of Peoria County granted defendant's motion to suppress evidence and the State has appealed. The issues on appeal are whether the police had probable cause to arrest defendant and whether exigent circumstances justified a warrantless search of a bus locker.

At the hearing on defendant's motions the court also heard testimony relating to a motion to quash a search warrant in a case involving two other defendants, Kim and Lynn Palanza. The propriety of that search warrant was before this court on appeal in *People v. Palanza*, 55 Ill. App. 3d 1028, 371 N.E.2d 687.

At the hearing on defendant's motions, the State presented evidence that a home at 400 East Illinois Street in Peoria was under surveillance by police authorities. Officer Dean Blair had been informed that there would be a drug delivery and was obtaining a search warrant for 400 East Illinois Street. Officer Jack Weinstein, who was conducting the surveillance, testified that at 7:20 p.m. two white males left the residence. Officer Weinstein remained at the house while other officers followed the vehicle in which the two white males had departed. A search warrant had been obtained for 400 East Illinois Street prior to the time the two persons left the residence.

Upon obtaining the search warrant, Officer Blair proceeded to the downtown area and not to 400 East Illinois. Officer Blair had received information from the same informant who had given him the information upon which the search warrant was based. The informant stated that there would be a delivery of cocaine by two white males, that these individuals would leave 400 East Illinois Street and would go to the Union Bus Depot and that one of the white males would have cocaine in his possession. The informant stated that he had seen cocaine in the possession of one of the white males and that a person had told him that they were going to the bus depot to make a delivery. The informant had also stated that there would be three persons involved in the transaction.

Officer Blair was advised by radio that two persons had left 400 East Illinois and had driven a van to the parking lot of the bus depot. When he

arrived at the parking lot, he observed the male passenger get out of the van, look inside the lobby of the depot, get back in the van and then get out again with the driver. At this point, the two persons were stopped by another officer, Officer Mitten, the defendant was searched, and a tin foil packet of cocaine was found in his pocket.

On cross-examination Blair testified that he had no search warrant or arrest warrant. He further testified that he did not tell Officer Mitten to arrest the people at the bus depot at the time of the stop, but only told him to tail them. When first asked if he had probable cause to arrest defendant, Blair stated he didn't know. When pressed further, Blair stated that he did not have probable cause to arrest defendant.

During the search of defendant's person, the officers also found a key to a bus locker. Before attempting to open the locker, the officers solicited and obtained advice to open the locker since one of the suspects was still missing and because the informant had said there was cocaine in a post office box. Shortly after taking defendant into custody, officers opened the locker and discovered a quantity of cocaine. No search of a post office box was ever conducted.

The defendant testified that he and Lynn Palanza had left the Palanza home on May 25, 1976, and had driven to the bus depot in Peoria. He stated there was nothing unusual about his driving as he went to the bus depot. When defendant arrived at the depot, he exited the van, stood outside for awhile and got back into the van. At this juncture defendant was stopped and searched. A key to a bus locker and a tin foil packet of white powdered substance were found in his pocket. The van defendant was riding in was parked about 20 to 30 feet from the bus depot's front door. Lynn Palanza also testified to substantially the same facts as did defendant.

At the conclusion of the testimony, the State moved to have the search warrant for 400 East Illinois Street be considered as evidence for the People in the Vogel hearing for the purpose of showing the reliability of the informant. The search warrant was so admitted. This is the same search warrant which this court has held to have been improperly issued in *People v. Palanza*, 55 Ill. App. 3d 1028, 371 N.E.2d 687. The trial court granted defendant's motions to suppress the evidence seized from defendant's pocket and from the bus locker and the State appeals. We shall consider each of the two motions separately.

As to the suppression of the tin foil packet obtained from defendant's person, the State argues that the police officers had probable cause to arrest defendant and conduct a search incident to the arrest. Defendant contends first that no probable cause to arrest in fact existed and second, that no arrest in fact occurred before the search.

■■ Counsel for both parties agree that the test for determining

probable cause to arrest is whether a reasonable and prudent man in possession of the knowledge which had come to the arresting officer would believe the defendant is guilty of an offense. (*People v. Macias*, 39 Ill. 2d 208, 234 N.E.2d 783.) A mere suspicion in the mind of an officer not so supported will not justify a search. (*People v. Henneman*, 367 Ill. 151, 10 N.E.2d 649.) When the arrest is unlawful, the search incident thereto is likewise unlawful and the evidence obtained thereby must be suppressed. (*Beck v. Ohio*, 379 U.S. 89, 13 L. Ed. 2d 142, 89 S. Ct. 223.) If an arrest is unlawful, the discovery of evidence upon search after arrest cannot relate back to operate as justification for the arrest. (*People v. Galloway*, 7 Ill. 2d 527, 131 N.E.2d 474.) The knowledge necessary to find probable cause to arrest may be founded upon hearsay of an informant, if the informant is of previously established reliability or if his information about the offense has been independently corroborated. *People v. Beattie*, 31 Ill. 2d 257, 201 N.E.2d 396.

■■ Applying the foregoing concepts to the facts and circumstances leading up to defendant's arrest, we believe the police did not have probable cause to arrest. The information given police by the informant fails to provide police with adequate information upon which to base an arrest. Without more definiteness in the information connecting defendant to possession of a controlled substance, the police were acting upon mere suspicion. Independent corroboration of the information provided by an informant is of little moment when the information as corroborated, fails to communicate knowledge from which the arresting officer could reasonably believe that a particular individual is guilty of a criminal offense.

The people rely on *People v. McFadden*, 32 Ill. 2d 101, 203 N.E.2d 888, and *People v. Gant*, 14 Ill. App. 3d 282, 302 N.E.2d 376, to support their position that the officers had probable cause to arrest, but we find each of them distinguishable on their facts. In *McFadden*, besides receiving information that defendant would be carrying a controlled substance, police received an accurate description of defendant, defendant's name, and information as to a bus which defendant would be on. When police met the bus, they asked an individual fitting the description of defendant if he was McFadden and after receiving an affirmative reply, the officers arrested him. A search of his person produced narcotics. In *People v. Gant*, police officers were told by an informant that defendant, Joseph Gant, was sitting nearby in a red convertible and that he had barbiturates in his possession. The informant knew this because he had just consumed two of them. Based upon this information and the observation that the informant was under the influence of narcotics, the officers proceeded to the location indicated by the informant. Upon seeing defendant in a red convertible as described by the informant, officers asked defendant to get

out of the car. As the defendant did so, he dropped some red capsules from his hand and after the officers retrieved them, the defendant was arrested.

Both of these cases clearly involve circumstances in which officers had acquired information which specifically linked the individual arrested to the commission of a criminal offense before an arrest was made. In *McFadden*, police could identify defendant by name or physical description of his person and his clothing. In *Gant*, not only does it appear that police knew the defendant by name and had information as to his whereabouts and the color and type of car he was sitting in, but police acquired personal knowledge that defendant had possession of a controlled substance when defendant got out of the car and the officers saw red capsules which appeared to be barbiturates fall from defendant's hand. We do not disagree with either opinion, but do not find them controlling of the present facts and circumstances.

• ■ ■ Further supporting the conclusion that the officers did not have probable cause are the statements of the officers themselves, who, in their testimony, denied defendant had been arrested before he was searched. On this state of affairs the search can hardly be considered incident to a lawful arrest where the arrest had in fact not yet occurred. (See *People v. Galloway*, 7 Ill. 2d 527, 131 N.E.2d 474.) The trial court was correct in granting defendant's motion to suppress the evidence seized from defendant's person. While what we have said may have disposed of the propriety of seizing the evidence from defendant's person, including both the tin foil packet and the key, we nevertheless believe there are additional reasons supporting the suppression of the evidence seized from the locker.

In justifying a warrantless search of the bus locker, the State argues that exigent circumstances mandated prompt action without a search warrant. The State argues that the possible existence of a confederate or accomplice of defendant who might have a key to the locker constituted an exigency. Furthermore, the defendant had a diminished expectation of privacy as to the contents of the locker because of the existence of the master key to the locker in someone elses possession. According to the State, this exigency, when coupled with the lack of a reasonable expectation of privacy regarding the contents of a bus locker, made the warrantless search reasonable. We disagree.

■ ■ ■ The key to evaluating whether exigent circumstances exist under the present conditions, is not simply whether a confederate or suspect is still at large, but the extent to which such a suspect constitutes a threat to the preservation of evidence. In cases cited by the State, we agree a clear and present danger existed that pertinent evidence would be destroyed. Here however, such a danger was minimal, if nonexistent, and could be

readily thwarted by stationing an officer at the locker while a warrant was sought. Perhaps more analogous than the cases relied upon by the State is *United States v. Chadwick*, 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476. There the arresting officers' exclusive possession of a locked trunk eliminated any risk that a confederate would remove the locker. The court held the warrantless search of the locker invalid. Furthermore, the *Chadwick* court distinguished searches involving automobiles because of the car's inherent mobility. While we recognize *Chadwick* presents a somewhat different situation, we believe it is persuasive support for our conclusion. In light of the ability of the police to eliminate the risk that any evidence or contraband in the locker would be destroyed or removed we believe no exigent circumstances existed to justify a warrantless search. The trial court was correct in suppressing the evidence seized from the locker.

For the foregoing reasons the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

BARRY, P. J., and SCOTT, J., concur.