(No. 36293.—No. 60-1346 ▮▮▮▮▮▮ Nos. 60-1347 and 60-1348 ▮▮▮▮

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HUBERT HARRISON, Plaintiff in Error.

*Opinion filed September 28, 1962.*

MARTIN L. BOGOT, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and EDWIN J. BELZ, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

By writ of error the defendant in this case, Hubert Harrison, brings to this court the records of his convictions upon three indictments returned by the grand jury of Cook County. The first indictment charged an offense of rape on April 14, 1960. That offense is not related to the occurrences that formed the basis of the second and third indictments.

Those indictments were concerned with events that took place on April 16, 1960, and they involved offenses alleged to have been committed, at the same time and place, upon two girls, one 16 years old and the other 13. There was a separate indictment as to each girl. As to the 16-year-old girl, the indictment charged rape and crime against nature. The indictment that related to the 13-year-old girl charged assault with intent to commit rape, crime against nature, and indecent liberties.

The second and third indictments were consolidated for trial. The defendant waived a trial by jury in all three cases. Both the rape case and the consolidated case were tried upon the same day. The defendant was found guilty in the rape case, and was sentenced to imprisonment for a term of ten years. In the consolidated case the defendant was found guilty upon all counts except the one that charged rape upon the 16-year-old girl. As to that count, he was found guilty of assault with intent to commit rape. The statutory indeterminate sentence was imposed as to each of the offenses of which the defendant was found guilty in the consolidated case, and the court ordered that all of the sentences imposed in that case should run concurrently with each other and with the sentence imposed in the rape case.

The record in the rape case and the record in the consolidated cases were separately certified by the clerk of the criminal court. The People have withdrawn their objection to the unorthodox procedure of reviewing multiple judgments of conviction upon a single writ of error, and we have not experienced undue difficulty in dealing with the two cases. (See *People* v. *De Cola,* 15 Ill.2d 527.) They will be discussed separately in this opinion.

### I.

In the rape case the prosecuting witness testified that she was married and lived with her husband at 4721 South Princeton Avenue in Chicago. At about 10:00 P.M. on April 14, 1960, she left to go to a club meeting at the home

of a friend who lived nearby. As she approached an alley north of 48th Place on Princeton she saw a man hurrying toward her. She turned to go into a church on the southeast corner of 48th Place and Princeton, and as she did so the man, whom she identified as the defendant, grabbed her and put a knife at her neck. The defendant held the knife at her neck and forced her to walk down an alley and into a partially wrecked garage. As he began to have intercourse with her, a car came through the alley and he pulled her up and pushed her into the yard so that they could not be seen. He then "carried" her back in the garage where he had intercourse with her.

When he left she ran home and told her husband what had happened. They called the police, who drove them about the neighborhood looking for the attacker. The search was unsuccessful, and they were taken to the station at 47th and Halsted, where the prosecuting witness gave a statement. She then was taken to Evangelical Hospital where she was examined by a physician. Four days later she identified the defendant from a police line-up that included five men.

For the defense, Rosalie Powers testified that she had been with the defendant at the Woodmere Hotel from around 10:30 that evening until 7:30 the next morning. The defendant denied that he raped the prosecutrix and testified that he had never seen her before. He testified that he had worked late that evening at the T.V. shop where he was employed, had gone to a tavern for a few moments, and had then spent the night at the hotel with Rosalie Powers.

The defendant's first contention is that his identification by the prosecuting witness was insufficient to prove his guilt beyond a reasonable doubt. The evidence showed that she had a good opportunity to observe him when he first approached her on a well-lit street corner, and that she had further opportunity to observe him when the car passed the garage where the rape occurred. But the defendant asserts

that he was prejudiced by inconsistent rulings of the trial judge upon objections to questions concerning lighting conditions. The prosecutrix was asked on direct examination as to the condition of the lighting after she and the defendant left the corner of 48th Place and Princeton. She had answered, "The streets are well lighted, and — —" when she was interrupted by a defense objection which was overruled. She did not complete her answer. On cross-examination her husband was asked whether it was dark in the alley where the rape occurred and he answered, "Yes, sir, it certainly is." An objection to the next question, "That is a dark neighborhood?" was sustained on the ground that the word "neighborhood" was too indefinite to be meaningful. Later, on redirect examination, her husband was asked by the State's Attorney whether "the streets, the area at 48th and Princeton, are light or dark?", and a defense objection was overruled.

We do not agree that the rulings of which the defendant complains were prejudicially inconsistent. The prosecutrix did not complete her answer. As to the testimony of her husband, a question concerned with the "neighborhood" can fairly be regarded as much less specific than one that centers upon the "area at" a particular street intersection. And on the more basic issue of proof of guilt beyond a reasonable doubt, the trial judge saw and heard the witnesses. He was not required to believe the testimony of the defendant and his alibi witness, and we see no reason to interfere with his conclusion that the defendant's guilt was established beyond a reasonable doubt.

The prosecutrix testified that when she got home her husband said, " 'Have you been to Mrs. Whitiker's?' and I said 'No, but I met a man with a switchblade knife and he raped me.' " On the ground that her complaint to her husband was made in response to a question that he had put to her, the defendant argues that there was no proper corroboration of the testimony of the prosecutrix. Apart from

the fact that this contention overlooks entirely her prompt complaint to the police, it is intrinsically unsound. It is true that a belated complaint, made in response to questions aimed at eliciting the admission of a suspected occurrence, is not regarded as "the natural and spontaneous expression of outraged feeling" and so is not admissible. (See *People* v. *Cappalla*, 324 Ill. 11, 18; *People* v. *Fryman*, 4 Ill.2d 224.) In such a case it is too likely that without the questioning there would have been no complaint. But the question in this case was innocuous, and it followed immediately upon the occurrence. It did not deprive the answer, which was actually not responsive, of the spontaneous and voluntary quality that is required. See Wigmore on Evidence, 3rd ed., secs. 1134, 1761.

On her direct examination the prosecutrix testified that the defendant had had an emission during the rape. On cross-examination she testified that on the night of the rape she was taken by the police to a hospital where she was examined by a doctor who gave a written report of her condition to the police. Thereupon the defendant's attorney demanded that the prosecution produce the doctor's report. The judge reserved his ruling on the motion until later in the trial while the prosecution sought to find the report. When the assistant State's Attorney reported that the report had not been found, the judge denied the demand for its production. The defendant contends that this ruling was erroneous.

In *People* v. *Moses*, 11 Ill.2d 84, 89, and in *People* v. *Wolff*, 19 Ill.2d 318, 327, we held that a defendant is entitled to the production of a prior statement for the purpose of impeaching the testimony of the witness who made the statement. In the case now before us there was no testimony as to the contents of the doctor's report and its production therefore could not have been used to show the prior inconsistent statement of any witness. At most, the report might have cast doubt upon the testimony of the prosecutrix

that the defendant had had an emission. Such a discrepancy would not, in our opinion, have sufficed to give rise to a reasonable doubt as to the defendant's guilt. We hold, therefore, that in the circumstances of this case it was not error to refuse to order the production of the report.

The defendant also contends that the evidence failed to show that the prosecutrix made "such resistence as demonstrates the act was against her will." (*People* v. *Fryman*, 4 Ill.2d 224, 228.) In answer to this contention, however, it is necessary only to refer to the fact that the defendant had held a knife to the neck of the prosecutrix at the outset, and as he left had "flashed the knife" and threatened to kill her if she told anyone.

The judgment of conviction in the rape case, indictment No. 60-1346, is affirmed.

2.

The consolidated cases involved two girls, one 16 years old and the other 13. The older girl testified that they were returning home from a dance at about 11:30 P.M. on April 16, 1960, when they were approached by a man with a gun who ordered each girl to take one of his arms. In this fashion he led them part way down the block and into a gangway between two buildings. The man at once unscrewed the only lightbulb lighting the gangway, and thereafter, she said, they were in total darkness. The man searched both girls and then committed various acts which need not be here described. It is sufficient to state that they established assault with intent to commit rape and crime against nature as to both girls, and indecent liberties as to the younger girl. He then ordered the girls to stand against the wall and count to 2000 while he left.

After he had gone through the gangway to the street, the girls went out through the rear, knocked on the door of a first-floor apartment, and asked the man who answered to call the police. On the following day police officers took the girls to the 11th Street Station, where they were shown

photographs, and picked out the picture of the man who had assaulted them. A few days later they picked him out of a line-up of five men. The testimony of the younger girl was substantially the same with respect to their encounter with the man, the events that occurred in the gangway, and the identification of the photograph and at the line-up.

There is, however, a significant difference in the testimony of the two girls, and that difference, together with other circumstances, compels us to conclude that the defendant's guilt was not established beyond a reasonable doubt.

The older girl identified the defendant as the man who had assaulted them. The younger did not. At no time was she asked to, nor did she, identify the defendant as the man who had assaulted them, or as the man whose photograph she picked out, or as the man she identified at the line-up. The omission does not appear to have been inadvertent, for the prosecution offered the testimony of a police officer to the effect that he was present when the girls identified the defendant's photograph and pointed out the defendant in the line-up. This testimony was not offered for the purpose of proving an implied admission. The officer was asked no questions about the defendant's reaction when the girls pointed to him in the line-up and said, "That is him," and so no admission could be implied.

The testimony of the officer, therefore, could only have been offered to bolster the testimony of the older girl and to close the gap that resulted from the failure or refusal of the younger girl to identify the defendant at the trial. For that purpose, however, it was clearly hearsay and was inadmissible. (*People* v. *Lukoszus*, 242 Ill. 101, 108; *People* v. *Krejewski*, 332 Ill. 120, 123; *People* v. *Reeves*, 360 Ill. 55, 64.) Its probative value is not enhanced by the fact that it was received without objection, and it cannot take the place of testimony, under oath, by the younger girl, identifying the defendant as the man who was in the gangway with her.

There are other circumstances, too, that cast doubt upon the identification of the defendant. Both girls testified that the man who assaulted them was wearing a hat. Nevertheless, the younger girl testified that he did not have "processed hair." She also testified that the man in the photograph that they picked out did not have processed hair. On the other hand, the older girl testified that the man in the photograph did have "a process."

More significant is the fact that the prosecution made repeated efforts to elicit testimony that there was some unusual characteristic about the appearance of the man who assaulted the girls that enabled them to recognize him. On direct examination the older girl was asked:

"Q. Was there anything about that picture that you noticed that was different?

A. Well the only thing that was different, the pictures that we seen, this man had wavy hair or something like that.

Q. Was there anything else that you noticed about the picture at that time?

A. No."

And on redirect examination the effort continued:

"Q. Was there anything unusual in his appearance that you noticed on May 14?

A. Well his clothes was dirty.

Q. Anything about his physical appearance?

A. No."

The similar questions put to the younger girl made no reference to the physical appearance of the defendant. She was asked, however, whether there was anything unusual about the appearance of the man whose photograph she identified. She answered, "Yes" and said that she noticed that "his eyes were sort of round and large."

At the conclusion of the defendant's testimony, his attorney requested him to stand up before the judge and asked, "What is that on your left eye?" The defendant

answered, "That is an injury from a fire that happened when I was four years old." There is no description in the record of the nature of the scar or defect in connection with the defendant's left eye. But there can hardly be any doubt that this was the unusual physical characteristic about which the prosecutor was inquiring, for in the course of his argument he stated that "I asked a question that perhaps was leading that he did not object to, and I did not get the answer that I expected."

Because the record does not establish the guilt of the defendant beyond a reasonable doubt, the judgments in the consolidated cases, indictments Nos. 60-1347 and 60-1348 must be reversed.

No. 60-1346, *Judgment affirmed.*
Nos. 60-1347 and 60-1348, *Judgments reversed.*