**People of the State of Illinois, Plaintiff-Appellee, v. George A. Bolden, Defendant-Appellant.**

**Gen. No. 53,871.**

First District, First Division.

April 6, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard E. Zulkey, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, George A. Bolden, waived a jury trial and was convicted of rape. He was sentenced to the Illinois State Penitentiary for a term of four to ten years.

The defendant contends that the pretrial motion to suppress the identification evidence should have been sustained and that he was not proven guilty of forcible rape beyond a reasonable doubt.

The evidence introduced at the hearing on the motion to suppress and at the trial, reveals that on January 15, 1968, at about 9:35 p. m., the eighteen-year-old prosecutrix, Dianne Clady, was walking in the neighborhood of 61st and Woodlawn. The street was well lighted. She testified that the defendant, George Bolden, whom she had not seen before, approached her and asked her if she had any money. She initially replied that she did not. At that point, a boy with a shotgun standing across the street between two cars called to the defendant to "grab her." As she attempted to get her money out of her purse, the boy said, "bring her across the street." She said the defendant then grabbed her arm and took her across the street. She had been talking face to face with the defendant, and as they crossed the street she saw his face again in the car light. Miss Clady testified that the defendant told her that he had a "38" and that if she screamed or attempted to run away they would kill her. She said that she had seen the other man's shotgun and was in fear of her life. The two men led her through a lighted gangway. When the noise caused several people to look down out of their windows, one of the men held his hand over her mouth and held her out of the light. They then took her onto a closed-in porch. Under threats of being beaten she assisted in the removal or her clothes, and both men then raped her. While one of them had intercourse with her the other would hold the shotgun. She said she was with the two men for about forty-five minutes.

Miss Clady's mother testified that her daughter arrived home on that evening crying and told her to call the police because two boys had raped her. Her clothes

were wet and unzipped. It was stipulated that if Dr. Kim were called to testify he would state that his examination of the complainant at the hospital on the night of the occurrence showed spermatozoa from a smear taken from her vagina.

That evening, Miss Clady told the police that her assailant, whom she later identified as the defendant, was about 6' 1" or 6' 2" and wore a black three-quarter-length coat, black pants and a dark shirt. She described him as being dark-complected with process hair and a thin mustache.

On January 16, 1968, the complainant went to a police station to look at pictures of some suspects. She said she was told that she was to look at two young men and see if she recognized either of them. She testified that she saw the defendant who was handcuffed in one of the interrogation rooms and she told the detective that he was one of her assailants. She denied ever saying she wasn't sure if he was the man.

Detective Joseph Beirne testified that the defendant was alone with two uniformed police officers in one of three small interrogation rooms at the police station. Three other persons were in another of the rooms. A youth arrested with the defendant was on another floor of the station. Detective Beirne said that he told the victim to look around and see if she saw any of her assailants. He said he never suggested to her that she point out the defendant. As soon as she looked in the first room, she walked back to the detective and said that the defendant was her attacker.

The defendant, George Bolden, testified that he never had intercourse with the complainant. He said the first time he saw her was at the police station. The defendant said a police officer asked her if he was the one and she said she wasn't sure. She walked out of the room, and when she returned she said he was the man who attacked her.

It is contended that the circumstances of the complainant's identification of the defendant at the police station were so unnecessarily suggestive and conducive to mistaken identification that the defendant was denied due process, and as a result, the in-court identification by the complainant deprived the defendant of a fair trial.

In Stovall v. Denno, 388 US 293, 87 S Ct 1967, the United States Supreme Court considered whether the confrontation of the defendant and a witness without a lineup two days after the murder was so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny due process of law. The court upheld the identification because the witness was hospitalized for major surgery to save her life. The court stated:

> The practice of showing suspects singly to persons for the purpose of identification, and not a part of a lineup, has been widely condemned. However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it. . . . 388 US at 302, 87 S Ct at 1972.

 In People v. Blumenshine, 42 Ill2d 508, 250 NE2d 152, our Supreme Court in considering Stovall held that if a defendant can support the claim that the identification was unnecessarily suggestive and conducive to irreparable mistaken identification the evidence is rendered inadmissible and not simply affected as to credibility. In Blumenshine the record did not contain enough relevant information as to allow the court to make an informed judgment on whether the witnesses' identifications were based on observations independent of and uninfluenced by the improper identification procedure. The court therefore vacated the judgment and remanded the case for a hearing where the State would have to establish by clear and convincing evidence that the identification had an origin independent of the improperly

suggestive "showup" at the police station. Among the factors the court listed which may be considered in determining whether a witness' identification has an independent origin are the opportunity to observe the alleged criminal act, the existence or absence of any discrepancy between any preidentification description and the defendant's actual description and any prior identification of another person.

■ With these guidelines in mind we have carefully examined the evidence. We have concluded from the totality of the circumstances that the identification of the defendant by the victim the next evening, after she was attacked, had an origin independent and uninfluenced by the improper identification proceedings at the police station where no lineup was arranged. The complainant was with her assailant for about forty-five minutes and had ample opportunity to observe his face on the well lit street and during the sexual attacks. She described her assailant as being about 6' 1" in height, with process hair and a thin mustache. This description was accurate and was not shaken at the trial when the complainant again made a positive identification of the defendant. In addition to Stovall and Blumenshine see People v. McMath, 104 Ill App2d 302, 244 NE2d 330; People v. Cook, 113 Ill App2d 231, 252 NE2d 29, and People v. Cowsette, 119 Ill App2d 418, 256 NE2d 25, handed down by this court in January, 1970.

■ It is also contended that the testimony of the prosecutrix was not sufficiently clear and convincing to lead to an abiding conviction that she was forcibly raped because there was no adequate corroboration, no resistance nor any outcry. We do not agree. This is not a case like People v. DeFrates, 33 Ill2d 190, 210 NE2d 467, cited by the defense, where the defendant knew the complainant who was scantily clad when she admitted him to her home at 3:00 a. m. to make an air conditioner service call and who made no outcry or attempt to escape and

little if any physical resistance. In the present case the complainant was confronted by two men she had never seen before. One of them had a shotgun, and the other told her that he had a "38." They told her that if she screamed or attempted to run away they would kill her. She testified that she was in fear of her life. We think that her testimony was sufficient to convict the defendant of forcible rape beyond a reasonable doubt. See People v. Harrison, 25 Ill2d 407, 413, 185 NE2d 244, 247.

The judgment of the Criminal Division of the Circuit Court is affirmed.

Affirmed.

MURPHY and ADESKO, JJ., concur.