THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KEVIN BROWN, Defendant-Appellant.

Fourth District    No. 13257

Opinion filed May 13, 1976.

Richard J. Wilson and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, and Charles M. Schiedel, Law Student, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (G. Michael Prall and James R. Sanders, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Defendant Kevin Brown appeals from a conviction by a jury and subsequent sentence in the Circuit Court of Champaign County of the charge of armed robbery of an Urbana, Illinois, laundromat on December 28, 1973. Defendant was sentenced to a term of not less than 6 nor more than 18 years.

The only issue raised by defendant on this appeal is his contention that the trial court improperly allowed the jury to consider the hearsay testimony of a police officer regarding out-of-court photographic identifications.

It appears from the record that on December 28, 1973, an armed

robbery took place at a laundromat at the corner of Race and University Streets in Urbana, Illinois. The attendant, Inja Kim, was approached by two black men at approximately 8:45 p.m. on the night in question. One pointed a gun at her while the other took a cash box containing approximately $157 in cash. The men then fled through the rear exit.

On the day following the robbery Ms. Kim was taken to the police station and shown eight photographs of suspects. She identified three of the photographs as resembling the taller of the two men who had robbed her. On July 9, 1974, Ms. Kim viewed a lineup. Eight black males were in the lineup, including the defendant and one Danny Simpson, a co-defendant. At that time, Ms. Kim was unable to identify any of the participants in the lineup as being involved in the robbery.

Robert Cuppernell was a customer of the laundromat at the time of the robbery. He entered through a side door and saw two black men rush past him and exit through the rear door. He testified that the men were about ten feet from him, and that he viewed them for about ten seconds. Cuppernell also viewed the lineup on July 9, 1974. At that time he was apparently able to identify Simpson, but could not identify the defendant. At the trial, however, Cuppernell was unable to identify Simpson, but testified that defendant was one of the men he saw fleeing from the laundromat on the night of the robbery.

At the trial, Ms. Kim testified as to the details of the robbery. After testifying concerning the photographic identification session on the day following the robbery, she was shown the pictures that she had previously viewed. At that time she was able to identify only two of the photographs as being among those she had previously identified. The photographs identified at the trial were those of co-defendant Simpson and another individual.

The State subsequently called Officer Kenneth Wilson, who had conducted the photographic identification session with Ms. Kim on December 29, 1973. Officer Wilson testified that during the session, Ms. Kim selected the photographs of defendant Brown, Simpson and another individual as being possible participants in the robbery. Defendant made no hearsay objection at that time.

The State also called Byron Adams as a witness. Adams testified that defendant and Simpson arrived at his home late in the evening of December 28, 1973, in an automobile belonging to defendant, and that the three played cards for about 20 minutes, and then went into the bedroom of Adams where they listened to music. According to Adams, he was told to go to the defendant's car and "get the money * * * from the Coin-O-Matic." The witness testified that Brown and Simpson told him that they took the money. He went to the car and returned with a box containing about $138 in cash. The three proceeded to divide the cash,

with Adams receiving only $5. Defendant Brown and Simpson left, and Adams placed the cash box under his bed.

Adams' stepfather, Elga Kyse also testified for the State. Kyse testified that after defendant Brown, Simpson and Byron Adams left, he heard on a news broadcast that the laundromat had been robbed. Thereafter a Kyse stepson, Mike Adams, came in, and the two proceeded to search Byron Adams' room. Under the bed they found the cash box which had been taken from the laundromat.

Defendant took the stand in his own behalf and testified that in the early part of the evening in question, he was with his girlfriend in Rantoul, and that he stayed at her apartment until 9 p.m. His girlfriend corroborated the story. Defendant further testified that after he left his girlfriend he returned to Champaign, where he stopped at the home of Byron Adams. He met Adams, he said, in the kitchen of the residence. About five minutes later Simpson arrived. Another defense witness, Danny Biggers, also testified that Simpson and Brown arrived separately. Defendant admitted playing cards and going to Byron Adams' room. He denied, however, that there was ever any discussion of an armed robbery or coin box, and further denied any involvement in the December 28 armed robbery.

Co-defendant Simpson also testified that he and defendant arrived at the Adams house separately, and testified that he had been playing chess at the home of a friend earlier. He, also, denied that there was any conversation about a robbery or its proceeds, or that he had anything to do with the robbery. The jury found Kevin Brown guilty of armed robbery, but was unable to agree on a verdict as to Simpson.

On the appeal in this court, defendant argues that the testimony of Officer Wilson, that Inja Kim had identified his photograph, constitutes reversible error. The testimony of Officer Wilson was apparently introduced to bolster the weak identification of defendant Brown as one of the robbers. Ms. Kim did not identify defendant at the trial, nor was she able to pick out defendant's photograph from a group of photographs she had viewed earlier. The testimony of Officer Wilson was introduced for no other reason than to prove the truth of the matter attempted to be asserted by Ms. Kim's testimony to the effect that defendant was one of the men who robbed Ms. Kim on the night of December 28, 1973. Our courts have held that such testimony, as presented, would constitute error in the trial proceedings. *People v. Harrison* (1962), 25 Ill. 2d 407, 185 N.E.2d 244; *People v. Denham* (1968), 41 Ill. 2d 1, 241 N.E.2d 415.

The State argues that the failure of the defendant to object to the testimony waived the error, and that, in any event the evidence of guilt was so clear that the error should be considered harmless. Defendant contends, on the precedent of *People v. Harrison* (1962), 25 Ill. 2d 407, 185

N.E.2d 244, and *People v. Wright*, (1965), 65 Ill. App. 2d 23, 212 N.E.2d 126, that the error was so prejudicial as to prevent defendant from obtaining a fair trial and that the court should consider such issue on appeal even though not objected to at the trial.

We agree that the identification testimony is weak and that defendant was identified by witness Cuppernell at the trial. We note that even though such identification is weakened by the fact that he had picked out Simpson at the lineup, and not defendant, we believe that the testimony of Byron Adams and the cash box taken from the laundromat, in support of Byron Adams' testimony, was substantial evidence showing that defendant was guilty of the crime as charged. The fact that the jury did not find Simpson guilty, it appears from the record, results from the fact that Simpson had steadfastly denied that he was involved in the robbery and that the statements to Adams, as to the robbery of the laundromat as well as other procedures, did not unquestionably establish that Simpson was a participant in the robbery. No testimony established that Simpson made any statement or admission that he participated in the robbery. Adams indicated Kevin Brown did most of the talking.

For the reasons stated, we conclude there was sufficient credible evidence to establish that defendant was guilty of the crime and that the record does not require that we remand this case by reason of the testimony, not objected to, of Officer Wilson referred to herein.

The judgment of the Circuit Court of Champaign County is, therefore, affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.