THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EUGENE R. WATTS, a/k/a Eugene R. White, Defendant-Appellant.

Fourth District   No. 13705

Opinion filed May 16, 1977.

James Geis and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Paul R. Welch, State's Attorney, of Bloomington (James E. Hinterlong and Robert M. Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his conviction by jury verdict of armed robbery and the imposed sentence of 5½ to 15 years.

Upon appeal it is argued that the physical evidence seized and defendant's inculpating statements were the product of an unlawful arrest and that the trial court erred in denying defendant's motions to suppress the several items.

Shortly after midnight on June 5, 1975, as an Arby's restaurant was being closed, an armed man herded two departing women employees back into the office of the manager and the three were tied. Currency in denominations of $20, $10, $5 and $1 were taken from the top of a desk and rolls of coins were taken from a safe, the total being in excess of $1200. The money was placed in "bank bags" kept in the office, one bearing the name of a local bank, and one inscribed "Denver Mint."

The police arrived shortly and obtained descriptions of the robber. The witnesses were taken to the police station where a composite picture or sketch was prepared by placing together various physical features provided in a kit. The description included an unusually luxuriant curly Afro hair arrangement which the description noted was possibly a wig.

The arrest ensued from the following facts: during the day a woman advised the police that her grandson had sold his Pontiac Firebird automobile that morning to a man who paid $700 in twenty, ten and five dollar bills and $100 in rolls of quarters. She indicated that the man seemed to fit the description of the robber placed in the newspaper. The officers interviewed the seller to obtain a description and to locate the car. The latter described the location of the apartment to which he went with the purchaser to get the money to pay for the car.

Shortly after 4 p.m., on June 5, a Pontiac car fitting the description was found parked. It had no license plates but a sticker was on the windshield. Defendant approached and advised that he owned the car.

Defendant was advised that he was suspected of armed robbery and would be taken to the police station to be placed in a lineup. Defendant denied any armed robbery. He was arrested and taken to the police station where he was advised of his rights under the rule of *Miranda.* Defendant continued to deny the robbery and gave oral consent to search his room in the apartment where he was visiting with his sister.

Defendant accompanied two officers to the apartment where his room was examined. They found a wig on the floor of a closet in his room matching the hair arrangement described by the witnesses to the robbery. They also located a money wrapper marked "$500," and an Arby "check list." The officers returned to their headquarters to consult with the State's Attorney about the authority given by defendant to search the apartment and being advised that defendant might give written consent to such search, defendant executed two written consents, one to search his automobile and one the apartment. Each noted the time as 6 p.m. Each written consent specifically advised defendant of his right to refuse a consent to search.

Returning to the apartment, the officers discovered currency and coins in rolls in a trunk in the room of the apartment occupied by defendant. The bank bags, more coins in a substantial amount and a handgun were found in a dufflebag in the trunk of the car. Thereafter, during the evening, the State's Attorney prepared an information and defendant was transferred to the county jail.

On June 6, between 12 and 1 p.m., after oral *Miranda* warnings and after defendant signed a written form setting forth his rights under the *Miranda* rule, defendant prepared a statement in his own handwriting before one Norton, a detective who had not participated in the investigation on June 5. Defendant does not contend that he ever requested an attorney.

The statement indicated that defendant obtained some $1400 in currency and $168 in coins from the robbery. The statement included the fact that two girls and a man were tied up during the course of the robbery. This statement indicated that a foreign student had agreed to join with him and had received some of the money.

On June 11, after signing a form setting forth his *Miranda* rights, defendant prepared a further statement in his own handwriting exonerating the foreign student of any participation.

Evidence was heard on defendant's motion to suppress the seizure of physical evidence and to suppress the statements. The trial court denied each motion. His docket entry shows that a written order on the denial of the motions was filed but the praecipe for record does not request such order and we have not been able to find it in the record. Such order would include findings of fact and conclusions of law. Ill. Rev. Stat. 1973, ch. 38, par. 114—12(e).

In argument, defendant characterizes the arrest as simply "investigatory" and made without probable cause so that the physical evidence seized and the statements made must be suppressed under the rule of *Davis v. Mississippi* (1969), 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394, and *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct.

2254. In each such case it was conceded upon appeal that there was not probable cause to make the arrest at issue.

In *Brown*, the only fact known to the officers at the time of the arrest of the defendant was that he was an acquaintance of the victim of a killing. In *Davis*, the officers had no identifying data and the record shows a scheme of general interrogation of young men of the black race in a dragnet procedure.

Section 107—2(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c)) provided that a peace officer may arrest without a warrant when:

> "He has reasonable grounds to believe that the person is committing or has committed an offense."

Here, there is no issue of the fact of a criminal offense.

At the time of this arrest the officers had a physical description, they were advised of the unusual Afro hair arrangement, and as described it would affect the appearance of height as described by the witnesses. An officer noted that defendant's mustache had the described characteristic of extending some distance below the corners of his mouth. They had been informed by a reliable source of defendant's purchase of an automobile with currency in a substantial amount of the kind taken in the robbery, and the unusual use of $100 in rolled quarters to complete the purchase. Coins with such description and in such amount were known to have been taken in the robbery.

■■ Probable cause to arrest arises from facts and circumstances of which arresting officers had reasonably trustworthy knowledge and which are sufficient to cause reasonably prudent men to believe that defendant had committed a known crime. (*McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056.) The officers deal with probabilities in the factual and everyday considerations upon which reasonable men, not technicians, may act. The knowledge upon which they act need not be admissible evidence. *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; *People v. Macias* (1968), 39 Ill. 2d 208, 234 N.E.2d 783; *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280; *People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.

■■■ Upon the facts in evidence the officers had probable cause to arrest defendant and the trial court correctly denied the motions to suppress the evidence and the confessions made.

Defendant urges that we must treat as plain error the fact that without objection an officer, Donnen, testified that the witness, Donna Spiecker, had identified defendant's picture from a group of six photographs shown to her on June 6. The witness, Spiecker, had made an in-court identification. On cross-examination, the witness responded that she had viewed a group of six photographs and, specifically, she had seen a

photograph identified as defendant's Exhibit D. (The record does not disclose the identity of the individual shown on such exhibit.) The cross-examination upon the subject of photographic identification then ceased. It is argued that the State's Attorney should have asked the witness on redirect examination whether she had identified defendant's photograph and that the State's Attorney's failure to ask such question deprived defendant of an opportunity to cross-examine the witness as to whether she had picked out the photograph which Donnen said that she had. We note that the testimony of several witnesses intervened between that of the witness, Spiecker, and the subsequent testimony of Donnen.

The fact that Donna Spiecker had identified defendant's photograph from a group shown her by Donnen was disclosed in the police reports included in the discovery by the State. There was no limitation of defendant's cross-examination of the witness as to the pictures which she viewed and it appears that defendant chose to limit his cross-examination upon the viewing of the pictures and did not ask her which picture she had identified. We find no facts which make the testimony of Donnen plain error within the rule of the cited *People v. Harrison* (1962), 25 Ill. 2d 407, 185 N.E.2d 244.

The judgment is affirmed.

Affirmed.

GREEN and REARDON, JJ., concur.