THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EARL JOHNSON, Defendant-Appellant.

Second District   No. 77-469

Opinion filed April 23, 1979.

Mary Robinson and Richard E. Cunningham, both of State Appellate Defender's Office, of Elgin, for appellant.

Gene L. Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendant-appellant Earl Johnson was charged in a Kane County indictment with two counts of armed robbery (section 18—2 of the Criminal Code of 1961, Ill. Rev. Stat. 1977, ch. 38, par. 18—2) and one count of burglary (section 19—1 of the Criminal Code of 1961, Ill. Rev. Stat. 1977, ch. 38, par. 19—1). These charges arose out of an armed robbery which occurred at the Elgin home of Mr. and Mrs. Dana Nielsen on February 17, 1977. Defendant's accomplices in the robbery, Linda Ortiz, Mary Anne Scott, Albert Taylor, and John Vance, were also charged in the same indictment. They eventually pleaded guilty to various other criminal offenses and were not brought to trial. Defendant pleaded innocent and demanded a trial by jury. The burglary count was later dismissed upon motion of the People. Defendant was convicted of both counts of armed robbery, and was sentenced to serve two concurrent terms of 9 to 15 years imprisonment. On this appeal, defendant has raised two issues for review: (1) whether the trial court erred in denying his motion to suppress evidence; and (2) whether the sentence imposed by the court was unjustly disparate from the sentences imposed upon his four co-defendants.

After reviewing the record and considering the arguments presented, we are of the opinion that the judgment of the Circuit Court of Kane County must be affirmed.

The facts relevant to both defendant's arrest and the seizure of articles later introduced into evidence at his trial are not in substantial dispute. On February 18, 1977, Officer Robert Hargesheimer of the Chicago Police Department received an anonymous phone call from a man who said that "he had heard on the street that people were talking

about the robberies that they committed." The anonymous informant gave the names of a Mr. Johnson, a man named "Red," and a girl named Linda, who were involved in robberies that took place in Elgin, Illinois. He also said these people could be found at 4144 North Sheridan Road, Apartment No. 604, along with the goods taken in the robberies. According to the caller, the stolen articles included "some weapons, some clothing, stereo equipment, and some sort of camera equipment."

Officer Hargesheimer then called the Elgin Police Department to verify the information supplied by the unknown informant. He was told by the Elgin Police that two robberies had recently occurred in Elgin where the type of property described by the informant was stolen. These robberies were committed by "two white females and some male Negroes." Hargesheimer was given descriptions of the people involved and a list of the property stolen. One of the suspects in the robbery was described as a black male, 22 to 27 years old, approximately 6 feet tall, and weighing 150 pounds. The articles taken in the robberies included a Lear Jet stereo, camera equipment, and a rabbit fur coat.

Prior to the day of the arrest, Officer Hargesheimer and his partner, Officer McCotter, checked with the manager of the Sheridan Road apartment building and confirmed that Shirley Johnson was a tenant in Apartment No. 604. Both police officers were acquainted with Earl Johnson and his wife Shirley from previous visits to the apartment building. McCotter had known Earl Johnson for approximately two years and was aware he was a heroin addict. Hargesheimer had been in contact with Shirley Johnson on approximately 20 different occasions, and he had previously arrested Earl Johnson for an unspecified offense. The Johnsons were aware that Hargesheimer and McCotter were police officers.

At about 8 p.m. on the night of February 19, 1977, Hargesheimer, accompanied by Sergeant Waldier and Officer McCotter, went to Earl and Shirley Johnson's apartment at 4144 North Sheridan Road. At the time, the officers did not have an arrest warrant for Earl Johnson nor a search warrant for the premises. They knocked on the door, which was opened by Mrs. Johnson. After identifying themselves as police officers, they asked if they could speak to Earl. Mrs. Johnson replied, "Okay, you can come in and talk to him." At the time, Earl Johnson could be seen from the doorway, as he was standing in the apartment about six to eight feet behind his wife. The policemen walked through a hallway and into the main room of the apartment. This room was approximately twelve feet square, and contained a bed and a table.

Upon entering the main room, Hargesheimer noticed a stereo system, consisting of a turntable and two speakers, sitting on a dresser-type table about three feet from the doorway. It bore the brand name of "Lear Jet." This matched the description of the stereo system taken in one

of the robberies in Elgin. The officers also saw two white females in the apartment, one of whom was attempting to stuff a revolver into a chair. This person was later identified as Linda Ortiz. Ortiz began to yell and got quite loud, asking the police officers whether they had a search warrant to come into the apartment. She was then placed under arrest. The other female, Mary Scott, was wearing a rabbit coat that matched the description of one of the items taken from one of the robberies. They asked her who owned it, and she replied that it was hers. At that point, she was arrested. Earl Johnson was asked by police where he got the stereo set. He replied that it was Linda's, and that she had brought it to the apartment. Noting that defendant matched the general description of the suspect in the robberies which had been furnished by the Elgin police, Hargesheimer told defendant that he was under arrest "for investigation of a robbery." Everyone in the apartment was arrested with the exception of Shirley Johnson, because she did not match the description of any of the suspects in the Elgin robberies.

After hearing this evidence and considering the arguments of counsel, the trial court denied defendant's motion to suppress. The trial court found that the anonymous tip and the corroborating information received from the Elgin Police Department were not sufficient evidence to warrant the arrest of defendant. The trial court also found that the viewing of the Lear Jet stereo system in the apartment, standing alone, was not a sufficient showing of probable cause to believe defendant had committed any offense. However, the court ruled that the totality of the circumstances surrounding the arrest combined to create reasonable grounds for the police to believe that Earl Johnson had committed the armed robbery in the Elgin area. Other circumstances contributing to a finding of probable cause were the presence of the two females meeting the description of the Elgin offenders and the items described by Elgin police as being stolen in the robberies. The trial court concluded by ruling that the Chicago Police had probable cause to arrest Earl Johnson and that the articles in the apartment confiscated by the police had been lawfully seized because they were in plain view.

Following the denial of defendant's motion to suppress evidence, the cause proceeded to trial on June 13, 1977. Although defendant has not raised any issues on appeal as to the conduct of the trial, we have briefly set forth the details in the evidence of the armed robbery in the trial as they are pertinent to the sentence imposed by the court.

On February 17, 1977, at approximately 9:30 p.m., Mr. and Mrs. Dana Nielsen were watching television in their Elgin home, while their two children, ages 7 and 4, were upstairs in bed. There was a knock at the door and Mr. Nielsen answered. A white girl and a black man, later identified as defendant, were standing at the door. The girl said her car

had broken down and she asked to use the phone. Mr. Nielsen told her that it would be all right, that she could come in. Once inside, the defendant produced a gun and demanded money. Defendant repeatedly threatened the Nielsens throughout the robbery. The Nielsens were later compelled to lie on a couch and the floor while defendant and three of his four accomplices ransacked the house. They remained in the house for over an hour, during which time the house was completely searched for money and valuables. After tying up the Nielsens with cord ripped from a vacuum cleaner, the defendant and his accomplices left in an automobile.

Approximately $3,500 worth of goods were taken in the home invasion. In the course of trial, Mr. Nielsen identified several objects, including the Lear Jet stereo and the camera equipment, as items stolen from his house on the night of the robbery.

We first turn to defendant's primary argument that the trial court erred in denying his motion to suppress evidence. The legal argument presented by defendant in support of this contention is highly technical. Defendant reasons that the tip received by police from the unknown caller wholly lacked veracity and credibility and cannot support a finding of probable cause (citing *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584). Although defendant admits that the tip was corroborated by information supplied by the Elgin police, he argues that this information failed to indicate that he had committed any crime; therefore, defendant contends, the police lacked probable cause to arrest him when they came to the apartment. Since the police entry to the apartment was made "over the protests of one of the occupants," both the entry and defendant's subsequent arrest (which was based in part on items found by police in the apartment) were illegal (citing *Recznik v. City of Lorain* (1968), 393 U.S. 166, 21 L. Ed. 2d 317, 89 S. Ct. 342). Thus, defendant concludes that the "plain view" doctrine is inapplicable because the police were not lawfully on the premises (citing *People v. Eastin* (1972), 8 Ill. App. 3d 512, 289 N.E.2d 673), and that the trial court erred in denying his motion to suppress.

On the other hand, the People argue that there existed sufficient independent corroboration of the anonymous tip to provide police with probable cause to arrest defendant either prior to or after the entry to the apartment. The People further submit that the entry to the apartment was entirely legal because police were admitted to the apartment with the consent of defendant's wife, who, as a co-tenant, had authority to admit police.

■■■ It is well established that a warrantless search and seizure is both reasonable and valid if it is incident to a lawful arrest. (*People v. Wright* (1968), 41 Ill. 2d 170, 173, 242 N.E.2d 180, 183.) There is no particular

requirement that an arrest be conducted under the authorization of an arrest warrant. (*Ker v. California* (1963), 374 U.S. 23, 35-41, 10 L. Ed. 2d 726, 739-42, 83 S. Ct. 1623.) The validity of an arrest without a warrant depends upon whether the arresting officers had "probable cause" to believe that a crime has been committed and that the defendant is the person who committed it. (*People v. Wright* (1968), 41 Ill. 2d 170, 173-74, 242 N.E.2d 180, 183.) The test of probable cause is whether a reasonable and prudent man in possession of the knowledge of the arresting officer would believe that the person to be arrested is guilty of the crime; that it is something less than the evidence required for conviction; and that it is based upon the factual and practical considerations of everyday life upon which reasonable men, rather than legal technicians, act. (*People v. Macias* (1968), 39 Ill. 2d 208, 213, 234 N.E.2d 783, 786-87, *cert. denied* (1969), 393 U.S. 1066, 21 L. Ed. 2d 709, 89 S. Ct. 721.) Where a warrantless arrest is valid, the warrantless seizure of evidence is justified as to items in plain view of the arresting officers. (*Harris v. United States* (1968), 390 U.S. 234, 236, 19 L. Ed. 2d 1067, 1069, 88 S. Ct. 992.) However, the officers must view the evidence from a position where they have a right to be, and the surrounding facts and circumstances must support a reasonable belief that the items seized constitute evidence of criminal activity. *People v. Holt* (1974), 18 Ill. App. 3d 10, 12, 309 N.E.2d 376, 378.

■ Assuming for the moment that the entry of the police into the apartment was lawful, we agree with the trial court's determination that probable cause existed for defendant's arrest after the Chicago police entered the Johnson apartment. Indeed, defendant does not contend otherwise. Prior to the entry into the apartment, the arresting officers were aware that a crime had been commited. They possessed a detailed description of the type of property stolen and general descriptions of the suspects in the robbery, including defendant. This information was obtained from a reliable source, the Elgin police, and served to corroborate in part the anonymous tip. When the police entered the apartment, they viewed many of the items taken in the Nielson robbery. These included the Lear Jet brand stereo system, the camera equipment, and the rabbit fur coat worn by Mary Anne Scott, all of which matched descriptions of the type of property stolen in the Elgin home invasion. Moreover, defendant, Linda Ortiz, and Mary Anne Scott all met the general descriptions of the suspects furnished by the Elgin police department. When all of the information known to the arresting officers at the time of the arrests is taken as a whole—the tip, the corroborative information supplied by the Elgin police, and the viewing of the suspects and the stolen property in the apartment—it is clear that probable cause for defendant's arrest existed, and the trial court's determination in this

regard is not manifestly erroneous. See *People v. Parrott* (1973), 16 Ill. App. 3d 435, 306 N.E.2d 566 (abstract).

■■ The critical issue in the instant case, therefore, is whether the entry by police into the Johnson apartment was lawful.[1] It is clear that the trial court found the entry to be lawful because the police were given permission to enter by Mrs. Johnson. There is substantial evidence in the record to support this finding. Both arresting officers testified that they were invited into the apartment by defendant's wife while defendant looked on after they had identified themselves as police officers. Although defendant asserts that the police entered the apartment "over the protests of one of the occupants," this contention is not substantiated by the record. The evidence clearly establishes that the police entered the apartment without protest and upon the invitation of defendant's wife; it is only after the police were lawfully admitted to the apartment that Linda Ortiz began to object to their presence. Since the police were admitted to the Johnson apartment with the consent of one of the tenants, we believe they were lawfully on the premises.

Defendant's reliance upon *Recznik v. City of Lorain* (1968), 393 U.S. 166, 21 L. Ed. 2d 317, 89 S. Ct. 342, is misplaced. In the *Recznik* case, the defendant at the very outset refused to allow police to enter his apartment, vitiating any claim of consent to the arresting officers' entry. In the instant case, the police were given permission to enter by defendant's wife, who, as a co-tenant of the apartment, had the authority to admit police. (See *People v. Stacey* (1974), 58 Ill. 2d 83, 317 N.E.2d 24.) We therefore conclude that the presence of the police officers in the apartment was lawful because they were admitted with the consent of defendant's wife.

In sum, we hold that the police had probable cause to arrest defendant once inside the apartment; that the police were lawfully on the premises of the Johnson apartment because Mrs. Johnson consented to their entry; and that the articles confiscated by police were legally seized because they were in plain view of the arresting officers. (*People v. Wright* (1968), 41 Ill. 2d 170, 174, 242 N.E.2d 180, 183.) Thus, the trial court did not err in denying defendant's motion to suppress evidence. In view of our determination of this issue, we need not consider the People's

---

[1] One minor point requires brief comment. Without benefit of any supporting authority, defendant contends that the trial court erred in failing to make a finding of fact as to why the police went to the Johnson apartment. However, we believe that it was unnecessary for the court to do so. The particular intent of the arresting officers, prior to the actual arrest, plainly has no relevance to the determination of whether probable cause in fact existed for the arrest. On the other hand, the circumstances surrounding the police entry to the apartment are clearly relevant to the determination of probable cause. Compare *Recznik v. City of Lorain* (1968), 393 U.S. 166, 21 L. Ed. 2d 317, 89 S. Ct. 342, with *People v. Parrott* (1973), 16 Ill. App. 3d 435, 306 N.E.2d 566 (abstract).

alternative argument that the arresting officers had probable cause to arrest defendant prior to the entry into the apartment.

We now address defendant's final argument that the sentence imposed by the court is excessive because it was unduly disparate from the sentences imposed upon his four co-defendants. As previously noted, defendant was sentenced to serve two concurrent terms of nine to 15 years imprisonment for armed robbery. Mary Anne Scott and Linda Ortiz both pleaded guilty to robbery and received sentences of two to six years. Albert Taylor pleaded guilty to armed robbery and was sentenced to serve six to nine years. John Vance also pleaded guilty to armed robbery and received a sentence of 4½ to 9½ years. All defendants, with the exception of Albert Taylor, were first offenders.

It is well established that fundamental fairness requires that defendants who are similarly situated should not receive grossly disparate sentences. (*People v. Holman* (1976), 43 Ill. App. 3d 56, 61, 356 N.E.2d 1115, 1118.) However, a defendant who contends that fundamental fairness requires a reduction of a disparate sentence has the burden to produce a record from which a rational comparison can be made. (*People v. Hansen* (1971), 132 Ill. App. 2d 911, 914, 270 N.E.2d 137, 139.) First of all, we note that defendant has failed to include in the record on appeal, or to account for the absence of, transcripts of his co-defendants' guilty pleas and sentencing hearings. In the absence of transcripts which would enable us to intelligently compare the sentences imposed, we cannot agree that the trial court abused its discretion in sentencing defendant to serve a term of nine to 15 years. It is evident from the proceedings at trial that defendant brandished the gun and threatened the Nielsens repeatedly throughout the course of the armed robbery. Considering the serious nature of the crime and defendant's active participation, we are convinced from the record before us that the trial court did not err in imposing a more severe sentence upon defendant.

Accordingly, the judgment of the Circuit Court of Kane County, and the sentence imposed thereon, are affirmed.

Affirmed.

RECHENMACHER and NASH, JJ., concur.