THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN L. ROGERS, Defendant-Appellant.

Fourth District No. 4—91—0915

Opinion filed July 16, 1992.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In July 1991, defendant, Melvin L. Rogers, was charged with possession with intent to deliver a controlled substance (more than 5 grams but less than 15 grams of a substance containing cocaine) (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(c)(2)). Defendant filed a pretrial motion to suppress the evidence taken from him at the time of his arrest in February 1991, that provided the basis of the charge against him. In September 1991, the trial court conducted a hearing on the motion and denied it. Defendant then waived a jury trial, and at a stipulated bench trial, the court found defendant guilty and sentenced him to four years in prison. Defendant appeals, arguing that the trial court erred by denying his motion to suppress. We affirm.

## I. FACTS

At the hearing on defendant's motion to suppress, defendant and police officers Scott Swan and John Murphy testified. Defendant's testimony essentially was that on February 21, 1991, about 8:30 p.m. he was a passenger in a vehicle driven by Kelvin Connerly in Champaign. A police officer pulled that vehicle over, told defendant to get out, and placed him under arrest. Defendant maintained that neither he nor Connerly had been doing anything illegal at the time. Later, at the police station, when officers told defendant they were going to search him, defendant removed a plastic bag from his underwear; it contained the cocaine which constituted the basis of the charge against him.

Deputy Swan testified that he was employed by the Champaign County sheriff's department and had been assigned to the Inter-

Agency Task Force, a special county-wide unit concerned with enforcement of drug laws. Swan was one of the officers involved in the arrest of defendant on February 21, 1991. Three days earlier, on February 18, Swan was working with a confidential source (CS) in an attempt to purchase cocaine from defendant. Swan had worked with that CS on at least three different occasions prior to February 18. Based on information from those earlier cases, Swan had obtained one arrest warrant and one search warrant.

On February 18 at about 8:30 p.m., Swan was present when the CS ordered some cocaine from Connerly by phone. The CS told Swan that Connerly worked the drug trade with Anglo Marrissette and defendant. Swan also knew from his independent information that these three individuals worked together. After the CS ordered cocaine from Connerly, the CS informed Swan that Connerly would be sending someone over to make the delivery. Swan and Detective Murphy then searched the CS, found no cocaine on him, and Swan left the residence to position himself outside to watch the residence from the street.

About 15 minutes after the CS called Connerly, Marrissette and Rogers drove up to the CS's residence and went inside. From Swan's vantage point, he could see the three of them talking but could not see if any transaction took place. After several minutes, Marrissette and defendant left the residence, got in their vehicle, and left.

John Murphy testified that he was a detective employed by the Champaign police department and assigned to the Inter-Agency Task Force. He also participated in defendant's arrest on February 21. Murphy's testimony regarding the events of February 18 at the CS's residence was substantially the same as that of Swan. Murphy had also worked with that CS in the past and determined that he had provided reliable information on three earlier occasions. On one occasion, Murphy used that information to get an arrest warrant.

Murphy testified that on the evening of February 18, 1991, the CS was searched before the arrival of Marrissette and defendant to insure that the CS did not have any other money, drugs, or contraband on his person. Murphy then provided the CS with some "official task force buy money."

Murphy hid himself within the CS's residence, and when Marrissette and defendant conversed with the CS inside the residence, Murphy could hear their voices but could not understand what they were saying. When the talking stopped and Murphy heard the door to the residence close, he immediately came out from hiding, spoke

with the CS, and received from him a quantity of what Murphy field-tested to be cocaine. The CS told Murphy that he got the cocaine from defendant. Murphy also searched the CS for any of the task force "buy money" and found none.

On February 21, 1991, the same CS told Murphy that he had ordered more cocaine from Connerly and that Connerly and defendant were going to deliver it that night. The CS told Murphy that Connerly and defendant would be leaving the area of the Country Brook apartments, located on the far west end of the City of Champaign, around 8 p.m. to make the delivery.

After receiving this information, Murphy went to that location prior to 8 p.m. to watch for Connerly and defendant. Murphy saw a vehicle he recognized as Connerly's and later recognized its two occupants as Connerly and defendant. Murphy watched as the vehicle proceeded in a direction toward the CS's residence. At that point, Murphy ordered the vehicle stopped, and the police arrested both Connerly and defendant. Murphy testified that based upon the information he received on February 21 from the CS, Connerly and defendant were "absolutely" in the right time frame for the cocaine delivery to take place.

On cross-examination, Swan testified that as of February 21, 1991, Connerly was not cooperating with any police authorities. Further, Swan suspected Connerly of being a criminal and did not regard him as a reliable source. Murphy testified that on February 21, Connerly was not a police informant and not reliable; instead, Murphy considered Connerly a criminal involved in illegal drug transactions.

After hearing this evidence, the trial court denied defendant's motion to suppress the evidence seized on February 21 from defendant. The court confined its analysis to the question of whether the police had probable cause on February 21 to arrest defendant, and stated the following:

> "The test is the totality of all the circumstances and all the information known to the police at the time that the arrest was made here. They know what occurred on the 18th. They know how the buy was set up, and they know that it was obtained in fact from the defendant. It was set up at the same or similar scenario for the 21st and everything is following the happening that's described will happen.
>
> Taking all the circumstances together, I believe that the officers had good probable cause on the 21st for that arrest;

and accordingly, the Motion to Quash the arrest to suppress the evidence is denied."

## II. Analysis

On this record, defendant argues that under the totality of the evidence before the court, the police did not have probable cause to arrest him. In so arguing, defendant places great emphasis on the fact that neither officer considered Connerly a reliable source. Defendant argues that because the essential information known to the police was based upon hearsay statements from Connerly to the CS, the trial court erred in crediting those statements.

The State responds by asserting that the controlled buy on February 18 and the setup for the sale on February 21 both served to establish the reliability and veracity of the CS, as did the previous information he supplied to the police. Thus, the State claims that its case is not entirely dependant upon information supplied by Connerly to the CS.

■ Both parties agree that *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147, disposes of the issues before this court, but they disagree as to how *Tisler* applies. *Tisler*, like the present case, involved the use of a confidential informant who supplied the police with information about illegal drug trafficking. (*Tisler*, 103 Ill. 2d at 231, 469 N.E.2d at 150.) The *Tisler* court held that "[w]hether probable cause exists in a particular case turns on the 'totality of the circumstances and facts known to the officers and court when the warrant is applied for.' " (*Tisler*, 103 Ill. 2d at 236, 469 N.E.2d at 152, quoting *People v. Free* (1983), 94 Ill. 2d 378, 400, 447 N.E.2d 218, 228.) Because *Tisler*, again like the present case, involved a warrantless arrest, the court addressed the probable cause standard in that context and wrote the following:

> "The probability of criminal activity, rather than proof beyond a reasonable doubt, is the standard for determining whether probable cause is present. [Citations.] Whether the necessary probability exists is governed not by technical legal rules, but rather by common-sense considerations that are factual and practical. [Citations.]
>
> When a police officer has proceeded without a warrant to search, seize evidence, or arrest a person, the trial court making a probable-cause determination is to apply standards at least as stringent as those that guide a magistrate in deciding whether to issue a warrant. ***

To determine whether a warrantless arrest meets the reasonable-grounds/probable-cause requirement, the trial court must decide whether 'a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense.' " *Tisler*, 103 Ill. 2d at 236-37, 469 N.E.2d at 152-53, quoting *People v. Wright* (1968), 41 Ill. 2d 170, 174, 242 N.E.2d 180, 183.

The *Tisler* court cited the then-recent decision of the United States Supreme Court in *Illinois v. Gates* (1983), 462 U.S. 213, 230-31 n.6, 76 L. Ed. 2d 527, 543 n.6, 103 S. Ct. 2317, 2328 n.6, as reaffirming "that the reliability of hearsay statements, as measured by the informant's veracity and basis of knowledge, is highly relevant to the existence of probable cause. Scrutiny of these factors *** is to guide a magistrate who must make a probable-cause determination." *Tisler*, 103 Ill. 2d at 238, 469 N.E.2d at 153.

 The court in *Tisler* also discussed what *Gates* had to say about informer's tips as follows:

"The *Gates* court also reaffirmed other methods established in its prior opinions for evaluating a tip. The court again emphasized the value of independent police investigation that corroborates the details of an informant's story. [Citation.] When a tip is proved accurate on some counts, the court explained, the informant is more likely correct about other details, including the alleged illegal activity. [Citation.] Corroboration operates in this way to reduce the risk that an informant's tip stems from an inaccurate rumor or a fabricated story." *Tisler*, 103 Ill. 2d at 238, 469 N.E.2d at 154.

 In accordance with these guidelines from *Tisler*, we have evaluated the evidence presented to the trial court and its findings and conclusions based thereon. We conclude that the trial court's decision, finding the presence of probable cause to arrest defendant on February 21, 1989, is not contrary to the manifest weight of the evidence. In so holding, we note that in *Tisler* the supreme court agreed with the concurrence of Justice White in *Gates* that the question is not whether the events observed by the police were innocent or incriminating. "Instead, the proper focus is 'whether the actions of the suspects, whatever their nature, give rise to an inference that the informant is credible and that he obtained his information in a reliable manner.' " (*Tisler*, 103 Ill. 2d at 251, 469 N.E.2d at 160, quoting *Gates*, 462 U.S. at 269, 76 L. Ed. 2d at 568, 103 S. Ct. at 2349 (White, J., concurring).) In our judgment, the facts in the present case, "giv[ing] rise to an inference that the

informant is credible and that he obtained his information in a reliable manner," are considerably stronger than the facts supporting that inference in *Tisler*.

For the reasons stated, we affirm the judgment of the circuit court.

Affirmed.

McCULLOUGH and LUND, JJ., concur.