**People of the State of Illinois, Plaintiff-Appellee, v. Hugh Edward Walton, Defendant-Appellant.**

Gen. No. 11,095.

Fourth District.

December 30, 1969.

Donald B. Mackay, Public Defender of McLean County, of Bloomington, for appellant.

Paul R. Welch, State's Attorney of McLean County, of Bloomington (Harold M. Jennings, James M. Carr, and David L. Coogan, Assistant State's Attorneys, of counsel), for appellee.

TRAPP, J.

Defendant was found guilty of murder following a jury trial. Sentence imposed was for a term of not less than 16 years nor more than 40 years. Defendant's post-trial motion was denied and he appeals.

It is urged that the court erred, (1) in admitting into evidence certain photographs of the victim to defendant's prejudice, (2) in admitting into evidence an automatic pistol and cartridge clip which, it is argued, were obtained through unlawful search and seizure, (3) in refusing to permit cross-examination of a prosecution witness to show coercion and intimidation, (4) in refusing to instruct and permit argument upon the prosecution's burden of proof arising under a bill of particulars, and (5) in that the consecutive sentence imposed is void and

should run as concurrent, with a sentence for burglary of not less than 5 years nor more than 10 years.

On October 31, 1967, the body of the victim, Tribbett, was found beside a country road in McLean County. The indictment alleges that the defendant shot the victim on September 22, 1967. A bill of particulars given orally in open court stated that the shooting occurred between 8:00 p. m. on September 22nd and 2:00 p. m. September 23rd.

A witness for the prosecution, Hines, testified that he was driving a car in which defendant was riding in the right front seat while the victim was in the back seat, and that while he was not paying serious attention, he believed that the others were arguing. He testified that defendant pulled out two weapons and shot Tribbett as he sat in the back seat. The body was put out of the car by the side of the country road a short distance from Route 51. Hines was serving a sentence for burglary at the time of trial and testified under immunity granted under this homicide.

Defendant was arrested at a motel in Davenport, Iowa, on October 2, 1967, at about 2:00 a. m. He was then in the company of one Patricia Reynolds and her infant child. This arrest by the Davenport police was pursuant to a warrant issued for defendant by reason of a burglary at Bradley, Illinois, where firearms were taken. Contemporaneous with the arrest an automatic pistol was seized in the motel room and subsequently identified as being the murder weapon, as well as being taken in the burglary at Bradley.

Patricia Reynolds testified for the prosecution that the morning after the murder, she and her child began travelling with the defendant. It appears that this status continued until the date of the arrest on October 2nd, the parties staying at various motels in the area of Rock Island, Davenport and Moline. During a part of this period

327

it appears that Hines was accompanying them. She testified that while she was staying with the defendant at a motel in Moline, defendant had told her how he had gotten angry with Tribbett and shot him as he sat in the back seat of the car.

In arguing the error in admitting the pistol and clip into evidence, the defendant first contends that the arrest was unlawful. A detective of the Davenport police testified concerning the arrest, stating that he had knowledge of a general police bulletin of a burglary at Bradley, Illinois, at which guns were stolen, and that he had a subsequent telephone call from the Bradley police department advising that a warrant had been issued for the arrest of defendant for this burglary and asking that he be picked up. Upon such state of facts an arrest is authorized by the Illinois Statute, chapter 38, § 107–2(b), Ill Rev Stats 1967. The officer testified that such facts also authorized arrest under Iowa law.

The defendant and Patricia Reynolds were discovered at the motel in Davenport at which time they were using the name Edwards. There is some evidence to the effect that the motel manager had given the police information concerning a long distance telephone call to a motel guest in which there was reference to the effect that a murder was known and that the guest should leave. At about 2:00 a. m. the police went to the room occupied in Edwards' name and called for Walton who came out. Defendant opened the door and subsequently acknowledged that he was Walton. He was placed under arrest outside the room. Patricia Reynolds came to the door, first saying that her name was Edwards. The testimony is that Reynolds consented that the officers come into the room to search. A weapon, not tendered in evidence, was pointed out by Reynolds to the officers, somewhat concealed on a ledge behind the bathroom door. The testimony is that the pistol at issue was observed on the top

of a nightstand between the beds at which time the clip was in a functioning part of the pistol.

No motion to suppress was filed prior to the commencement of trial. The issue was raised by oral motion at the conclusion of the testimony in chief of the Davenport detective. He was then examined further out of the presence of the jury. There is no other evidence upon the issue.

The trial court ruled that the pistol was seized as incident to a lawful arrest at a time when it was in plain view, and that Patricia Reynolds had such status as a cotenant of the room to consent to the search. The motion to suppress was denied.

Defendant argues that there was no search incident to an arrest as the defendant was outside of the room and in custody. He further contends that if the pistol was in plain view, there was no need to go into the room to obtain it. Finally, it is argued that Reynolds had no authority to consent to the search. Defendant cites chapter 38, § 108–1, Ill Rev Stats 1967, but no authorities supporting the point of view. Such statutory section provides that upon lawful arrest the officer may search the person arrested and his "immediate presence" for the purpose of protecting the officer from attack, preventing an escape, discovering the fruits of crime or articles or things which may have been used in the commission of, or constitute evidence of, an offense.

■■ The Supreme Court has held that a search implies a prying into concealed places, but that the seizure of contraband or evidence in plain view is not unreasonable. The People v. Tate, 38 Ill2d 184, 230 NE2d 697; The People v. Pickett, 39 Ill2d 88, 233 NE2d 560. Facts somewhat comparable to defendant's contention, that since defendant was outside of the room under arrest there was no necessity for the officers to enter the room, are found in The People v. Davis, 33 Ill2d 134, 210 NE2d

530, where the defendant was arrested for a traffic violation. He got out of the car to produce his driver's license and thereupon the officer saw a tinfoil package on the floor of the car. This proved to contain narcotics. It was held that there was no search, but rather a reasonable seizure of an article in plain view. The record is not precise in describing from what point the officer saw the automatic pistol which he seized and unloaded. In The People v. Wright, 41 Ill2d 170, 242 NE2d 180, an officer standing upon a public right-of-way observed operations incident to policy gambling through the window. It was held that it was not a search to observe that which was in plain view, and that the ensuing arrest was lawful and the seizure of the material was not unreasonable. In Harris v. United States, 390 US 234, 19 L Ed2d 1067, 88 S Ct 933, it is said that where an officer has a right to be in a position to observe, objects in plain view may be seized and introduced into the evidence.

■ ■ Entering the room is not, in itself, a search. Reynolds was occupying the room with her infant and the record shows that she had been the consort of defendant and lived with him with her infant for some days, staying at various motels. We cannot say that entering the room with her consent produced a trespass. The officer's seizure of the pistol in plain view on a nightstand was not illegal. The People v. Wright, supra. Since there was no search in fact, we need not discuss the authorities such as People v. Rodriquez, 79 Ill App2d 26, 223 NE2d 414, concerning the authority of a person other than the defendant to consent to search premises.

■ Defendant urges that the court erred in admitting into evidence two photographs taken by the Coroner at the time and place where the body was found. It is urged that such photographs are prejudicial and inflammatory and were of no probative value. One photograph shows a body in underbrush taken some distance from the feet and little of the upper body can be discerned.

Such photograph is no more inflammatory than a view of a normal body. The second photograph shows a head and upper torso in advanced decomposition.

The defendant cites The People v. Lefler, 38 Ill2d 216, 230 NE2d 827 and The People v. Jackson, 9 Ill2d 484, 138 NE2d 528. In each case autopsy procedures had so altered the appearance of the body that the pictures had no relevance to the testimony. In Lefler there was detailed medical testimony and the nature and extent of the injuries were not disputed. In this case defendant's bill of particulars called upon the prosecution to state the cause of death. Proceeding with its case in chief, the prosecution case is extensive upon the extreme difficulty of conducting an autopsy and in locating and removing two bullets.

In The People v. Nicholls, 42 Ill2d 91, 245 NE2d 771, and The People v. Speck, 41 Ill2d 177, 242 NE2d 208, it is held that photographs are admissible even though defendant is willing to stipulate as to identity and cause of death. Here, as in Speck, the photographs corroborated testimony as to how the body was found and the ballistic expert identified the body from which the bullets were removed by means of the photographs last described. There was no error in the exercise of discretion in admitting the photographs.

■■■■ The court refused to permit defendant to cross-examine the witness, Reynolds, concerning a purported conversation between the latter and a woman probation officer in a courtroom corridor. It is proposed that as a product of such conversation the witness testified under threat and intimidation. A purported offer of proof was made. Defendant's counsel stated he believed that the witness was told that her child would be taken away if she testified to what the *probation officer believed* was perjury. The State's Attorney advised the court that the probation officer had said that the child of the witness would be taken away if she *committed*

perjury. The court sustained the objection to such cross-examination. He then interrogated the witness before the jury concerning her knowledge of the fact that she must tell the truth and asked whether she would tell the truth.

Prior to cross-examination of the witness, defendant's counsel was supplied with a tape recording of her statement given to the State's Attorney. His subsequent cross-examination of the witness did not undertake to impeach her testimony in the light of the recorded statement, or to seriously challenge any detail of her testimony. Stated somewhat summarily, a party is entitled to cross-examine for the purposes assigned here and it is not necessary that such testimony be as to matters upon direct examination. Gard, Illinois Evidence Manual, Rule 474. The court's examination of the witness before the jury was improper as it was likely that the effect would be to emphasize such testimony, and perhaps cause the jury to give it undue weight. But there is actually no potential impeachment where the testimony of the witness is unchallenged. It cannot be said that the defendant was prejudiced by such ruling.

The defendant urges that the court erred in refusing to give his instructions and to permit his argument concerning the prosecution's burden of proof as to the time when the shooting occurred arising by reason of the answer to a bill of particulars. Actually, the motion demanded "The specific date on which the offense was committed." The prosecution evidence in chief did not purport to state an hour.

It appears that defendant seeks to argue the possible impeachment of the witness, Hines, in the comparison of his testimony with details as to the times given in a prior statement to the sheriff and to, thereafter, argue the weight of the evidence. He cites The People v. Westrup, 372 Ill 517, 25 NE2d 16 and People v. Petropoulos, 59 Ill App2d 298, 208 NE2d 323. As is

stated in those cases, the function of a bill of particulars is to permit the defendant to prepare his defense and to limit the evidence which may be introduced by the prosecution. In Petropoulos it is pointed out that the answer to a bill may limit the State's evidence as to dates or times if important to a defense of alibi or to some other defense. Here, defendant did not, by objection or otherwise, seek to limit the State's evidence. The admissibility of evidence is determined by the court and the bill of particulars does not go to the jury. The People v. Parker, 355 Ill 258, 189 NE 352. See Illinois Pattern Jury Instructions, Criminal, § 2.06.

 Defendant contends that the purported consecutive sentence imposed is vague and indefinite, and that we should hold that such sentence should be served concurrently with one or more other sentences. The record shows that defendant was sentenced upon a conviction of armed robbery by the Circuit Court of Kankakee County in case No. 67–26–Y. Such sentence imposed on February 26, 1968, was for the term of not less than 5 nor more than 10 years. The judgment here contains the language, "This sentence to be served consecutively to any other sentence which may have been imposed." Such language is so broad that it may be said to make this sentence consecutive to other sentences not in the present record. A sentence should be so complete as not to require construction by the court to ascertain its import, and so complete that it will not be necessary for a nonjudicial or ministerial officer to supplement the written words to ascertain its meaning. People v. Combs, 304 Ill App 467, 26 NE2d 668. The statute, chapter 38, § 1–7(m), Ill Rev Stats 1967, provides that a sentence, ". . . may commence at the expiration of the term. . . ." A sentence to commence in the future must be so certain that the termination of the first term and the commencement of the second may be ascertained from the record without the necessity of construing or supplement-

333

ing it. Where the judgment order fails to clearly define the limits of the sentence intended to run consecutively, the cause must be remanded for proper sentence. The People v. Dennison, 399 Ill 484, 78 NE2d 232. See also The People v. Chatman, 36 Ill2d 305, 223 NE2d 110.

The judgment of conviction is affirmed, but the judgment of sentence is reversed and the cause remanded with directions to enter proper sentence.

Affirmed in part, reversed in part, and remanded with directions.

CRAVEN, P. J. and CREBS, J., concur.